**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **SHANE ROSHTO and NATALIE ROSHTO** ) | CIVIL ACTION NO. 2:10-cv-01156 |
| ) | |
| **VERSUS** ) | SECTION B (JUDGE LEMELLE) |
| ) | |
| **TRANSOCEAN, LTD and BP, PLC** ) | MAGISTRATE 3 (KNOWLES) |
| ) | |
| | JURY TRIAL DEMANDED |

**SECOND AMENDED COMPLAINT**

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Natalie Roshto, individually and as personal representative of Shane Roshto (sometimes referred to as "plaintiff decedent") and her minor son, Blaine Roshto, who stating that no answer to the Original Complaint or First Amended Complaint for Damages having been filed, files this Second Supplemental and Amended Complaint for Damages supplementing and amending Plaintiff's Original and First Supplemental Complaint as supplemented or amended below, so that the Complaint now reads as follows:

A.

Plaintiff amends the caption to read:

> Plaintiff, Natalie Roshto, individually and as personal representative of Shane Roshto and her minor son, Blaine Roshto vs. TRANSOCEAN, LTD., TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC., TRANSOCEAN DEEPWATER, INC., BP PLC, BP PRODUCTS NORTH AMERICA, INC., BP EXPLORATION AND PRODUCTION, INC., HALLIBURTON ENERGY SERVICES, INC., SPERRY

1

DRILLING SERVICES, WEATHERFORD INTERNATIONAL LTD., CAMERON INTERNATIONAL CORPORATION D/B/A CAMERON SYSTEMS CORPORATION, TRITON ASSET LEASING GMBH, TRITON HUNGARY ASSET MANAGEMENT LIMITED LIABILITY COMPANY, TRITON HUNGARY ASSET MANAGEMENT KFT, TRANSOCEAN HOLDINGS, LLC., and MI SWACO.

Plaintiff Supplements and Amends the Original and First Supplemental Complaint so that each paragraph reads as follows:

1.

Made defendants herein are:

(A)   TRANSOCEAN, LTD, (TRANSOCEAN ENTITY), is a foreign corporation doing business in the State of Louisiana;

(B)   TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC., (TRANSOCEAN ENTITY), is a foreign corporation doing business in the State of Louisiana;

(C)   TRANSOCEAN DEEPWATER, INC. (TRANSOCEAN ENTITY), is a foreign corporation doing business in the State of Louisiana;

(D)   BP, PLC (BP ENTITY), is a foreign corporation doing business in the State of Louisiana;

(E)   BP PRODUCTS NORTH AMERICA, INC. (BP ENTITY), is a foreign corporation doing business in the State of Louisiana;

(F)   BP EXPLORATION AND PRODUCTION, INC. (BP ENTITY), is a foreign corporation doing business in the State of Louisiana;

(G) HALLIBURTON ENERGY SERVICES, INC., (HALIBURTON ENTITY), hereinafter referred to as "Halliburton," is a foreign corporation doing business in the State of Louisiana;

(H) SPERRY DRILLING SERVICES, (HALIBURTON ENTITY), a division of Haliburton, hereinafter referred to as "Sperry," is a foreign corporation doing business in the State of Louisiana;

(I) WEATHERFORD INTERNATIONAL LTD., hereinafter referred to as "Weatherford," is a foreign corporation doing business in the State of Louisiana;

(J) CAMERON INTERNATIONAL CORPORATION D/B/A CAMERON SYSTEMS CORPORATION, hereinafter referred to as "Cameron," is a foreign corporation doing business in the State of Louisiana;

(K) TRITON ASSET LEASING GMBH, hereinafter referred to as "TRITON" and/or a "TRANSOCEAN ENTITY," is a foreign corporation doing business in the State of Louisiana;

(L) TRITON HUNGARY ASSET MANAGEMENT LIMITED LIABILITY COMPANY, hereinafter referred to as "TRITON" and/or a "TRANSOCEAN ENTITY," is a foreign corporation doing business in the State of Louisiana;

(M) TRITON HUNGARY ASSET MANAGEMENT KFT, hereinafter referred to as "TRITON" and/or a "TRANSOCEAN ENTITY," is a foreign corporation doing business in the State of Louisiana;

(N) TRANSOCEAN HOLDINGS, LLC, hereinafter also referred to as a "TRANSOCEAN ENTITY," is a foreign corporation doing business in the State of Louisiana; and

(O) MI SWACO, is a foreign corporation doing business in the State of Louisiana.

2.

The jurisdiction of this Honorable Court is based upon the provisions of 28 U.S.C. 1333(1), and is being brought pursuant to the provisions of 46 U.S.C. Section 30104 ("The Jones Act") and the provisions of the general maritime law and general maritime products liability law.

3.

At all times pertinent, Blaine Roshto, three years of age, is the natural child of Shane Roshto and Natalie Roshto, who were lawfully married and living together with their minor son, Blaine Roshto. Natalie Roshto is the personal representative of her minor son, Blaine Roshto, and of her presumed deceased husband, Shane.

4.

Defendants are justly and truly indebted unto your plaintiff, Natalie Roshto, individually and as personal representative, for the following reasons, to-wit:

5.

At all material times, Shane Roshto was employed by TRANSOCEAN ENTITIES as a Jones Act seaman.

6.

Shane Roshto was permanently assigned by defendant, TRANSOCEAN ENTITIES, to work aboard the offshore drilling vessel, DEEPWATER HORIZON, a semi-submersible mobile drilling unit that was owned and/or operated and/or chartered and/or controlled by TRANSOCEAN ENTITIES and/or BP ENTITIES at all material times herein. Shane Roshto was employed by TRANSOCEAN ENTITIES and permanently assigned to the vessel, DEEPWATER HORIZON, at all material times herein.

7.

On or about April 20, 2010, Shane Roshto was performing his duties as a deck floor hand on-board the vessel, DEEPWATER HORIZON, 50 miles southeast of Venice, Louisiana. The

vessel was located more than a marine league outside of and adjacent to the Louisiana shore. Without warning to the plaintiff, on or about 10 p.m., April 20, 2010, while the vessel, DEEPWATER HORIZON, was performing drilling operations for crude oil, an explosion occurred on the vessel, causing eleven (11) of her crewmembers to be thrown overboard to their death. Shane Roshto was one of those crewmembers thrown to his death.

7a.

As a result of the above-described incident, Shane Roshto's body was not found despite an extensive and thorough search orchestrated by the United States Coast Guard which lasted several days. It has now been over two weeks since that search was terminated by the USCG. The USCG has taken testimony and/ or statements from co-workers which confirm that Shane Roshto was in the direct vicinity of the blast that caused the vessel to sink. Moreover, the vessel from which he disappeared was more than thirty miles offshore. Under the general maritime law (*Deal v. A.P. Bell Fish Co.*, 647 F.2d 438 (5th Cir. 1982), Shane Roshto is herein alleged to be presumed dead as a matter of law.

7b.

Defendant herein, HALLIBURTON INTERESTS, prior to the explosion, were engaged in cementing operations of the well and well cap and, upon information and belief, improperly and negligently performed these duties, which was a cause of the explosion. Defendant herein, SPERRY, prior to the explosion, was engaged in monitoring gas levels and other "measurement while drilling" and "surface data logging" and, upon information and belief, improperly and negligently performed these duties, which was a cause of the explosion.

7c.

Defendant herein, WEATHERFORD, was both the supplier of defective products that were used aboard the DEEPWATER HORIZON and immediately prior to the explosion, was engaged in drilling operations which caused a breakdown of equipment and hole integrity

thereby allowing oil and gas into the well column and onto the DEEPWATER HORIZON and ran the inner production liner, among other operations, and, upon information and belief, which was a cause of the explosion.

7d.

Defendant herein, CAMERON, was a manufacturer of products and equipment, including, but not limited to, the multiplex control system, single and double preventers and wellhead connector on the DEEPWATER HORIZON vessel and, upon information and belief, improperly and defectively manufactured these products and equipment, which was a cause of the explosion.

7e.

Defendant herein, MI SWACO, was contracted to provide drilling fluid services to the rig DEEPWATER HORIZON, owned by Transocean and leased to BP. MI Swaco, in conjunction with Halliburton failed to maintain appropriate drilling fluid weight before and during the cement operation, thus allowing gas to escape and ignite, ultimately resulting in a deadly explosion.

8.

Shane Roshto, at all times pertinent, was where he was ordered to be and performing the duties and functions he was instructed and obliged to perform pursuant to the directives of defendant, TRANSOCEAN ENTITIES.

9.

The accident was caused by no fault of the plaintiffs and was caused solely by the negligence of the defendants as more fully set forth herein.

10.

Paragraph 10 is deleted.

11.

At all times material hereto, the vessel on which Shane Roshto was injured and/or died was owned, navigated in navigable waters, manned, possessed, managed, controlled, chartered and/or operated by defendants, TRANSOCEAN ENTITIES and/or BP ENTITIES.

12.

These casualties occurred as a result of the negligence of defendants, TRANSOCEAN ENTITIES, BP ENTITIES, WEATHERFORD, CAMERON, HALLIBURTON ENTITIES and MI SWACO. These acts of negligence render the defendants liable to plaintiffs pursuant to the provisions of 46 USC § 30104 and the general maritime law for negligence.

13.

Shane Roshto's incident was caused by defendants' violation of numerous statutes and regulations, including, but not limited to, statutes and regulations issued by the United States Minerals Management Service (MMS) and the United States Coast Guard, including but not limited to, the items iterated in paragraph 15.

14.

Paragraph 14 is deleted.

15.

The above-described incidents were caused solely by the negligence of defendants, TRANSOCEAN ENTITIES, BP ENTITIES, WEATHERFORD, CAMERON, HALLIBURTON ENTITIES, and MI SWACO through their agents, servants and employees, which are more particularly described as follows:

NEGLIGENCE OF TRANSOCEAN ENTITIES

a. Failing to provide a competent crew;

b. Failing to properly supervise its employees;

   c. Failing to properly train and/or supervise plaintiff decedent and other employees;

   d. Failing to provide plaintiff decedent with a safe place to work, and requiring plaintiff to work in unsafe conditions;

   e. Failing to provide sufficient personnel to perform operations aboard the vessel;

   f. Failing to properly follow drilling protocols and policies, proper well monitoring and control practices;

   g. Failing to exercise due care and caution;

   h. Failing to avoid this accident;

   i. Failing to provide decedent with a seaworthy vessel;

   j. Other acts of negligence which will be shown more fully at trial.

### NEGLIGENCE OF BP ENTITIES

   a. Failing to properly train and/or supervise its crew and other employees;

   b. Failing to ensure that its crew worked in a safe and prudent manner;

   c. Failing to provide plaintiff decedent with a safe place to work, and requiring plaintiff to work in unsafe conditions;

   d. Failing to exercise due care and caution;

   e. Failing to avoid this accident;

   f. Failing to provide decedent with a seaworthy vessel;

   g. Other acts of negligence which will be shown more fully at trial.

### NEGLIGENCE OF WEATHERFORD

   a. Failing to sufficiently and competently perform drilling operations aboard the vessel;

   b. Failing to properly supervise its employees;

   c. Failing to properly train and/or supervise plaintiff and other employees;

   d. Failing to provide plaintiff decedent with a safe place to work, and requiring plaintiff to work in unsafe conditions;

8

e. Failing to provide sufficient personnel to perform operations aboard the vessel;

f. Failing to exercise due care and caution;

g. Failing to avoid this accident;

h. Providing and manufacturing equipment used in drilling operations which was unreasonably dangerous due to design or defect and are liable under the General Maritime Product Liability laws.

i. Other acts of negligence which will be shown more fully at trial.

### NEGLIGENCE OF CAMERON

a. Failing to manufacture products and equipment free of defects on the vessel, and the component parts thereof;

b. Failing to properly supervise its employees;

c. Failing to properly train and/or supervise plaintiff a decedent and other employees;

d. Failing to provide plaintiff decedent with a safe place to work, and requiring plaintiff to work in unsafe conditions;

e. Failing to provide sufficient personnel to perform operations aboard the vessel;

f. Failing to exercise due care and caution;

g. Failing to avoid this accident;

h. Other acts of negligence which will be shown more fully at trial.

### NEGLIGENCE OF HALLIBURTON ENTITIES

a. Failing to sufficiently and competently perform cementing operations aboard the vessel;

b. Failing to properly supervise its employees;

c. Failing to properly train and/or supervise plaintiff decedent and other employees;

    d.  Failing to provide plaintiff with a safe place to work, and requiring plaintiff to work in unsafe conditions;

    e.  Failing to provide sufficient personnel to perform operations aboard the vessel;

    f.  Failing to exercise due care and caution;

    g.  Failing to avoid this accident;

    h.  Other acts of negligence which will be shown more fully at trial.

<u>NEGLIGENCE OF MI SWACO</u>

    a.  Failing to monitor pressure of wells;

    b.  Failing to use adequate weight drilling fluid to prevent gas escape;

    c.  Failing to follow industry protocol and procedure during plug completion phases;

    d.  Use of sea water as weight and gas control medium during drilling and completion processes;

    e.  Attempting to carry out drilling operations with substandard and defective cement casing; and

    f.  Other acts of negligence which will be shown more fully at trial.

16.

In the further alternative, plaintiff, reiterating and re-alleging each and every allegation set forth above, as though set forth herein in extenso, avers the applicability of the doctrine of Res Ipsa Loquitur.

17.

As a result of the above-described negligence, Plaintiff, Natalie Roshto, individually and as personal representative of her minor son, Blaine Roshto, sustained the following damages:

    a.  Physical and mental pain and suffering, mental anguish, distress and fright for Shane Roshto, decedent;

  b. Past, present and future mental anguish, pain, suffering, grief, depression and anguish;

  c. Past, present and future medical expenses;

  d. Past lost wages;

  e. Past lost found;

  f. Loss of future earning capacity;

  g. Loss of future found;

  h. Loss of fringe benefits;

  i. Loss of services and support;

  j. Loss of nurture, guidance, care and instruction;

  k. Loss of funeral expenses;

  l. Loss of inheritance;

  m. Disfigurement, disability and/or death;

  n. Loss of enjoyment of life;

  o. Punitive damages;

  p. All survival damages recognized under the general maritime law and,

  q. Other damages which shall be proven at trial.

18.

Plaintiff is entitled to prejudgment interest on her damages from the dates of loss.  As to any damages which the court determines are not properly subject to an award of prejudgment interest, plaintiff demands interest from the date of judicial demand.

19.

Plaintiff is entitled to recover all costs of these proceedings, including filing fees, expert witness fees, attorney's fees and other court costs and litigation costs.

20.

Based on information and belief, due to the gross negligence and fault of defendants TRANSOCEAN ENTITIES' shore side management, the DEEPWATER HORIZON was unseaworthy and unfit for the job task required of her, which unseaworthy condition caused or substantially contributed to the explosion and vessel sinking described herein.

21.

By virtue of defendants TRANSOCEAN ENTITIES' callous and willful disregard for the condition of its vessel, which condition was either caused by, known to or should have been known to Defendants' shore side management personnel, plaintiff is entitled to punitive damages in an amount to be determined by this Honorable Court.

22.

Based on information and belief, due to the gross negligence and fault of defendants BP ENTITIES in their management, control, supervision and direction of the DEEPWATER HORIZON and drilling activities thereon, an ultrahazardous situation was created onboard the DEEPWATER HORIZON that was a cause of the explosion and vessel sinking described herein.

23.

By virtue of defendants BP ENTITIES' callous and willful disregard for the safety of the crew of the DEEPWATER HORIZON, including plaintiff's decedent Shane Roshto, plaintiff is entitled to punitive damages in an amount to be determined by this Honorable Court.

24.

Plaintiff demands a trial by jury.

25.

To the extent that the Original and First Supplemental and Amending Complaints have not been supplemented and amended herein, Plaintiff reasserts, reiterates and re-alleges each and every allegation set forth therein, as though set forth herein in extenso.

**WHEREFORE**, plaintiff, Natalie Roshto, individually and as personal representative of Shane Roshto and of her minor son, Blaine Roshto, prays that the defendants, TRANSOCEAN, LTD., TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC., TRANSOCEAN DEEPWATER, INC., BP PLC, BP PRODUCTS NORTH AMERICA, INC., BP EXPLORATION AND PRODUCTION, INC., HALLIBURTON ENERGY SERVICES, INC., SPERRY DRILLING SERVICES, WEATHERFORD INTERNATIONAL LTD., CAMERON INTERNATIONAL CORPORATION D/B/A CAMERON SYSTEMS CORPORATION, TRITON ASSET LEASING GMBH, TRITON HUNGARY ASSET MANAGEMENT LIMITED LIABILITY COMPANY, TRITON HUNGARY ASSET MANAGEMENT KFT, TRANSOCEAN HOLDINGS, LLC., and MI SWACO, be duly cited and served with a copy of this Amended Complaint and that after due proceedings are had there be judgment rendered herein in favor of the plaintiff and against defendants, TRANSOCEAN, LTD., TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC., TRANSOCEAN DEEPWATER, INC., BP PLC, BP PRODUCTS NORTH AMERICA, INC., BP EXPLORATION AND PRODUCTION, INC., HALLIBURTON ENERGY SERVICES, INC., SPERRY DRILLING SERVICES, WEATHERFORD INTERNATIONAL LTD., CAMERON INTERNATIONAL

CORPORATION D/B/A CAMERON SYSTEMS CORPORATION, TRITON ASSET LEASING GMBH, TRITON HUNGARY ASSET MANAGEMENT LIMITED LIABILITY COMPANY, TRITON HUNGARY ASSET MANAGEMENT KFT, TRANSOCEAN HOLDINGS, LLC., and MI SWACO, in an amount sufficient to adequately compensate your plaintiff, individually and as personal representative, for her damages, together with legal interest thereon from date of judicial demand until paid, for all costs of this suit and for all general and equitable relief.

        **RESPECTFULLY SUBMITTED BY:**

        **MARTZELL & BICKFORD, A.P.C.**

        S/ Scott R. Bickford
        _____
        **SCOTT R. BICKFORD (T.A. #1165)**
        **LAWRENCE J. CENTOLA III (# 27402)**
        **NEIL F. NAZARETH (#28969)**
        **usdcedla@mbfirm.com**
        338 Lafayette Street
        New Orleans, LA 70130
        (504) 581-9065
        (504) 581-7635 Fax
        Attorneys for Natalie Roshto

        AND

        **RONNIE G. PENTON (#10462)**
        **The Law Offices of Ronnie G. Penton**
        **rgp@rgplaw.com**
        209 Hopper Place
        Bogalusa, LA 70427
        (985) 732-5651
        (985) 732-5579 fax