UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: DEEPWATER HORIZON | * * * * * * * * * * * * * | CIVIL ACTION NO. 10-1156 (LEAD) c/w CIVIL ACTION NO. 10-1758 (MEMBER)<br><br>JUDGE CARL J. BARBIER<br><br><br>MAGISTRATE JUDGE SALLY SHUSHAN |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

### BP DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND TO STATE COURT

The State of Louisiana, by and through the District Attorney for the Parish of Plaquemines, filed in Louisiana state court a Petition for Damages against the defendants under the Louisiana wildlife statute, La. R.S. § 56:40.1 *et seq*. Plaintiff's Petition asserts an action arising out of defendants' exploration and drilling operations on the Outer Continental Shelf ("OCS" or "Shelf") and the oil spill in the Gulf of Mexico. (Pet. ¶¶ 6-12.)

Defendants removed the action to this Court pursuant to 43 U.S.C. § 1349(b)(1)(A) (the federal Outer Continental Shelf Lands Act ("OCSLA")). Plaintiff has now moved to remand the case to state court. Plaintiff's motion has no basis in fact or law, and should be denied. This Court has original jurisdiction under Section 1349 of OCSLA.

By its terms, Section 1349(b)(1)(A) grants federal District Courts wide-ranging jurisdiction to hear and decide any action "arising out of, or in connection with" exploration and drilling operations on the Outer Continental Shelf. Under established Fifth Circuit precedent, a

District Court has original subject matter jurisdiction over a plaintiff's action if it would not have arisen "but for" exploration and drilling operations conducted on the OCS. *See, e.g.*, *Tenn. Gas Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150 (5th Cir. 1996). OCSLA is an **independent grant** of federal jurisdiction, and hence is not subject to the well-pleaded complaint rule. *See Amoco Prod. Co. v. Sea Robin Pipeline Co.*, 844 F.2d 1202, 1205 (5th Cir. 1988).

Here, there is no dispute that Plaintiff's action arises from the defendants' operations on the OCS; indeed, Plaintiff concedes as much. Had defendants not been performing exploratory and drilling operations on the OCS, Plaintiff would have had no occasion to file its Petition concerning harm to wildlife allegedly caused by those operations and the resulting spill. In sum, removal is proper and this Court has subject matter jurisdiction. Remand should be denied.

## BACKGROUND

On June 1, 2010, the State of Louisiana, by and through the District Attorney for the Parish of Plaquemines in the State of Louisiana, filed a Petition for Damages ("Petition") against BP Exploration & Production Inc., BP Products North America Inc., and BP America Inc. (collectively, "BP Defendants"). The Petition asserted a claim under La. R.S. § 56:40.1 *et seq.* for damage to wildlife resulting from the fire and explosion on the *Deepwater Horizon* rig located in the Gulf of Mexico on the Shelf.

Plaintiff's allegations are clear, on their face, that this claim arises from and is inextricably connected to the BP Defendants' operations on the OCS, including the exploration, development, and/or production of oil and other minerals in the subsoil and seabed of the OCS. Specifically, Plaintiff alleges that:

- The BP Defendants (along with BP p.l.c., which is not a party to this case) "were the owners of the [United States Minerals Management Service] Mineral Lease G32306 . . . , and the minerals produced from the 'Lease.'" (Pet. ¶ 6.)

- "[A]t all times material herein, BP EXPLORATION & PRODUCTION INC. was the operator of the Lease." (*Id*. ¶ 7.)

- "On April 20, 2010, a fire, explosion and resulting spill of oil and other minerals, contaminants and/or pollution including disbursements not yet identified occurred at the site of the Deep Water Horizon rig operated on the Lease, in the Gulf of Mexico, located approximately 52 miles southeast of the port of Venice, Louisiana . . . ." (*Id*. ¶ 8.)

- "The oil spill remains uncontained and has entered into and continues to enter into the waters of the State of Louisiana, including Plaquemines Parish, and the waters of the state in the Gulf of Mexico . . . ." (*Id.* ¶ 9.)

- "As a result of the spill, the Defendants have unlawfully killed, and/or injured fish, wild birds, wild quadrupeds, and other wildlife and aquatic life in violation of [La. R.S. § 56:40.1] within the Parish of Plaquemines, State of Louisiana." (*Id.* ¶ 12.)

These allegations clearly establish that Plaintiff complains of activities that occurred on the OCS as a result of the *Deepwater Horizon* incident. Plaintiff nevertheless seeks to avoid federal jurisdiction by alleging that it purportedly "does not plead, and will never at any time in the future plead, any claim or cause of action arising under any federal law, and asserts no such claims or cause of action herein." (*Id.* ¶ 14.)

The BP Defendants removed Plaintiff's claim on June 17, 2010, and Plaintiff has now moved to remand to state court.

## ARGUMENT

I. **THIS COURT HAS ORIGINAL JURISDICTION OVER THIS CASE UNDER OCSLA.**

    A. **Statutory Framework**

OCSLA declares that "the subsoil and seabed of the outer Continental Shelf appertain to the United States and are subject to its jurisdiction, control, and power of disposition." 43 U.S.C. § 1332(1). OCSLA thus establishes "national authority over the OCS at the expense of both foreign governments and the governments of the individual states." *Tenn. Gas Pipeline*, 87 F.3d at 153. "We have recognized that OCSLA's jurisdictional grant is broad, and that the Act covers

3

a wide range of activity occurring beyond the territorial waters of the states on the outer continental shelf of the United States." *Texaco Exploration & Prod., Inc. v. AmClyde Engineered Prods. Co.*, 448 F.3d 760, 768 (5th Cir. 2006) (citations and internal quotation marks omitted).

The purposes of OCSLA are many, and embrace not just the efficient exploitation of resources on the Shelf, but also provide for (i) protection of the environment, including wildlife, (ii) consideration of the interests and input of affected States and local governments, and (iii) harmonization of OCSLA with the operations of the Oil Pollution Act of 1990, which establishes the Oil Spill Liability Trust Fund.  Specifically, OCSLA's relevant purposes are to:

> \* \* \*
>
> (2) ***preserve, protect, and develop oil and natural gas resources*** in the Outer Continental Shelf in a manner which is consistent with the need (A) to make such resources available to meet the Nation's energy needs as rapidly as possible, (B) ***to balance orderly energy resource development with protection of the human, marine, and coastal environments***, (C) to insure the public a fair and equitable return on the resources of the Outer Continental Shelf, and (D) to preserve and maintain free enterprise competition;
>
> \* \* \*
>
> (4) ***provide States, and through States, local governments***, which are impacted by Outer Continental Shelf oil and gas exploration, development, and production ***with comprehensive assistance in order to anticipate and plan for such impact***, and thereby to assure adequate protection of the human environment;
>
> \* \* \*
>
> (6) ***assure that States, and through States, local governments***, which are directly affected by exploration, development, and production of oil and natural gas ***are provided an opportunity to participate in policy and planning decisions*** relating to management of the resources of the Outer Continental Shelf;
>
> \* \* \*

> (8) ***establish an oilspill liability fund*** to pay for the prompt removal of any oil spilled or discharged as a result of activities on the Outer Continental Shelf and for any damages to ***public or private interests*** caused by such spills or discharges;
>
> \* \* \*

43 U.S.C. § 1802 (emphasis added).

National authority over the OCS is exercised in two interconnected ways. ***First***, OCSLA "makes federal law exclusive in its regulation of the OCS . . . ." *Tenn. Gas Pipeline*, 87 F.3d at 153; *see also Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 480-481 (1981); 43 U.S.C. § 1333. Under this framework, "gaps" in federal law are filled by "the 'applicable and not inconsistent' laws of the adjacent States," and state laws are adopted "as surrogate federal law." *Gulf Offshore Co.*, 453 U.S. at 480-81; *see also Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 349 (5th Cir. 1999); *EP Operating Ltd. P'ship v. Placid Oil Co.*, 26 F.3d 563, 566 (5th Cir. 1994); *Union Tex. Petroleum Corp. v. PLT Eng'g, Inc.*, 895 F.2d 1043, 1052 (5th Cir. 1990) ("Any other result here would frustrate the Congressional purpose that the OCS be treated as an area of exclusive federal jurisdiction within the state where state law will apply to fill in the gaps in the federal law."); *see also Laredo Offshore Constructors, Inc. v. Hunt Oil Co.,* 754 F.2d 1223, 1228 (5th Cir. 1985) ("If the OCSLA was intended only to govern those cases directly implicating the regulatory and proprietary purposes of the Act, there would have been no need to make available such a broad legal base, including both civil and criminal laws, upon which courts could draw to fill in anticipated gaps in federal law.").

In sum, this body of substantive law was "intended 'to govern the ***full range*** of potential legal problems that might arise in connection with operations on the Outer Continental Shelf.'" *EP Operating Ltd. P'ship*, 26 F.3d at 569 (citing *Laredo Offshore*, 754 F.2d at 1228) (emphasis added).

*Second*, OCSLA grants federal District Courts broad jurisdiction to decide *any* dispute "arising out of, or in connection with" operations conducted on the OCS:

> [T]he district courts of the United States shall have jurisdiction of cases and controversies *arising out of, or in connection with* (A) *any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals*, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals, or (B) the cancellation, suspension, or termination of a lease or permit under this subchapter . . . "

43 U.S.C. § 1349(b)(1) (emphasis added). *See also EP Operating Ltd. P'ship*, 26 F.3d at 569 ("[B]road reading of the jurisdictional grant of section 1349 is supported by the expansive substantive reach of the OCSLA.").

OCSLA defines "minerals" as including "*oil*, gas, sulphur, geopressured-geothermal and associated resources . . . ." 43 U.S.C. § 1331(q) (emphasis added). "Exploration" is the "process of searching for minerals, including . . . any drilling," and "development" includes "those activities which take place following discovery of minerals in paying quantities, including geophysical activity, drilling, platform construction, and operation of all onshore support facilities, and which are for the purpose of ultimately producing the minerals discovered." 43 U.S.C. § 1331(k), (l).

Also, according to the Fifth Circuit, the term "operation" is to be read expansively as "the doing of some physical act." *Sea Robin Pipeline*, 844 F.2d at 1207. As a result, this jurisdictional grant "should be read co-extensively with the substantive reach" of OCSLA — that is, to "the entire range of legal disputes that [Congress] knew would arise relating to resource development on the Outer Continental Shelf." *EP Operating Ltd. P'ship*, 26 F.3d at 569. Federal jurisdiction thus depends on a factual connection between the suit and resource

6

development on the OCS, and not on any particular legal theory of recovery plaintiffs might allege or the relief they might seek.

In short, 43 U.S.C. § 1349(b)(1)(A) creates a factual-nexus grant of independent federal jurisdiction tied to the existence of exclusive federal sovereignty over the OCS as mandated by Congress. OCSLA is a comprehensive scheme that declares absolute federal control over mineral exploration on and under the seabed on the Shelf. OCSLA also seeks to balance environmental protection against economic development. Here, by the State's own admission, its allegations that wildlife have been taken within the Parish of Plaquemines in violation of La. R.S. § 56:40.1 *et seq.* arise out of the *Deepwater Horizon* incident, which occurred on the Outer Continental Shelf in direct connection to the Defendants' oil exploration, development, and production operations.

### B. OCSLA Establishes Jurisdiction Here Because The Parties' Dispute Would Not Have Arisen "But For" Defendants' Operations On The Outer Continental Shelf.

The connection to Shelf operations required for purposes of establishing OCSLA jurisdiction is not a difficult standard for a removing defendant to meet. The Fifth Circuit applies an expansive "but for" test, under which the requisite factual nexus is established, and the District Court has original subject matter jurisdiction, *if the parties' dispute would not have arisen "but for" the exploration or development operations on the Outer Continental Shelf*. *See, e.g.*, *Tenn. Gas Pipeline*, 87 F.3d at 155. This but-for test reflects the "broad jurisdictional grant under § 1349," because "a broad, not a narrow, reading of this grant is supported by the clear exertion of federal sovereignty over the OCS." *Id.* (quotation marks omitted).

Thus, the Fifth Circuit in *Tennessee Gas Pipeline* had "no difficulty in deciding that § 1349 grants original jurisdiction in federal court" over a claim involving an allision with a platform affixed to the OCS that was used to extract and transport minerals from the OCS.

7

87 F.3d at 154. "The undeniable fact is that there would not have been an accident had Tennessee Gas not built its platform to extract minerals from the OCS." *Id.* at 155. As the Fifth Circuit reasoned, "This was clearly enough physical activity on the OCS to constitute an operation." *Id.* at 154. Similarly, in *Barger v. Petroleum Helicopters, Inc.,* 692 F.2d 337 (5th Cir. 1982), the court held that a case arising from the crash of a helicopter ferrying employees to production platforms was covered by the OCSLA because the pilot "would not have been killed in a helicopter crash in the Gulf of Mexico 'but for' the fact that he was employed to transport eleven workers to a fixed platform on the Shelf. His work furthered mineral exploration and development activities and was in the regular course of such activities." *Id.* at 340.

Likewise, in *EP Operating*, the District Court had original jurisdiction over an action to determine ownership interests in an offshore platform and other facilities even though active operations at the site had ceased. Former operations transporting minerals and the potential for future operations established the required factual connection, even if the only remaining activity would be to dismantle the offshore facilities. *See* 26 F.3d at 567-68; *see also United Offshore Co. v. Southern Deepwater Pipeline Co.*, 899 F.2d 405, 407 (5th Cir. 1990) (District Court had jurisdiction even though underlying dispute among partners for control of pipeline was "one step removed" from actual operations on the OCS, since the dispute would affect the efficient exploitation of resources from the Gulf and thus threaten the total recovery of federally-owned minerals).

Applying these well-settled standards, this Court clearly possesses jurisdiction over Plaintiff's cause of action. Plaintiff concedes that the oil spill that forms the basis of the Petition connects to "the [United States Minerals Management Service] Mineral Lease G32306" (Pet. ¶ 6), which is "in the Gulf of Mexico, located approximately 52 miles southeast of the port of

Venice, Louisiana," (*id*. ¶ 8).  Here, there would have been no claim of damage to Louisiana wildlife "but for" the operation on the OCS.  Such allegations clearly establish that Plaintiff's claim would not have arisen but for the BP Defendants' production-related operations at the site, and hence this Court has subject matter jurisdiction.  *See Tenn. Gas Pipeline*, 87 F.3d at 155 (holding that but-for test was satisfied when "there would have been no navigational error but for the existence of the platform"); *Barger*, 692 F.2d at 340.

### C. Plaintiff's Arguments That This Court Lacks Jurisdiction Have No Merit.

In the face of these clear precedents, Plaintiff makes only two arguments.  *First*, Plaintiff relies on the "well-pleaded complaint rule" that courts are bound to apply only in the context of federal-question jurisdiction under 28 U.S.C. § 1331, and argues that its causes of action are based solely on Louisiana, not federal, law.  *Second*, Plaintiff argues that jurisdiction under Section 1349 is not appropriate because this case would not "affect the efficient exploitation of resources from the OCS and/or threaten the total recovery of federally-owned resources." Remand Mem. at 5-6 (quotation marks omitted).  Neither of these arguments has any merit.

#### 1. The Well-pleaded Complaint Rule Is No Obstacle To Removal Under OCSLA.

Plaintiff first claims that any case removed to federal courts on a non-diversity basis — including cases under OCSLA — must involve a "federal issue . . . appear[ing] on the face of the complaint and must involve a claim founded directly on federal law."  Remand Mem. at 4. Plaintiff is incorrect and posits a false dichotomy by which jurisdiction in removed cases must be premised either on diversity jurisdiction under 28 U.S.C. § 1332 or on federal question jurisdiction under 28 U.S.C. § 1331.

In reality, there is also a third category of jurisdiction that properly supports the removal of cases from state court to federal court — statutory grants of independent jurisdiction outside

9

of the Section 1331 or 1332 frameworks.  Fifth Circuit precedent clearly establishes that the failure to specify federal law on the face of the complaint poses no bar to federal court jurisdiction under OCSLA.  *See Tenn. Gas Pipeline*, 87 F.3d at 152 (holding that court had removal jurisdiction "even assuming that [plaintiff's] . . . well-pleaded complaint asserts a maritime claim"); *Sea Robin Pipeline Co.*, 844 F.2d at 1205 (stating that the court "need not traverse the Serbonian Bog of the well pleaded complaint rule . . . because [Section 1349] expressly invests jurisdiction in the United States District Courts").

Plaintiff misconstrues the proper application of the well-pleaded complaint rule.  The well-pleaded complaint rule is a gloss on the federal-question subject matter jurisdiction statute (28 U.S.C. § 1331) alone; that rule does not apply to other federal statutes independently creating federal jurisdiction.  *See Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 494-95 (1983); *Osborn v. Bank of the United States*, 22 U.S. (9 Wheat.) 738, 819 (1824).

It is indeed long established that, pursuant to the well-pleaded complaint rule, in order for a claim to arise "under the Constitution, laws, or treaties of the United States," *see* 28 U.S.C. § 1331, the federal question "must be disclosed upon the face of the complaint, unaided by the answer," *Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 127-28 (1974); *see* Remand Mem. at 4 nn. 11-12 (relying on *Phillips Petroleum* and other Section 1331 cases arising under statutes other than OCSLA).  But it is equally long established that the "'well-pleaded complaint' rule applies only to statutory 'arising under' cases." *Am. Nat'l Red Cross v. S.G.*, 505 U.S. 247, 258 (1992).  It is therefore erroneous to "invoke [the well-pleaded complaint] rule outside the realm of statutory 'arising under' jurisdiction, *i.e.*, jurisdiction based on 28 U.S.C. § 1331, to jurisdiction based on a separate and independent jurisdictional grant." *Id.*  OCSLA's Section

10

1349 is such a "separate and independent jurisdictional grant."  *See, e.g.*, *Tenn. Gas Pipeline*, 87 F.3d at 153 ("In this case OCSLA provides an alternative basis for original jurisdiction.").

Furthermore, any dispute concerning or connected to Shelf operations is necessarily and exclusively governed by *federal* law, regardless of how it is pleaded.  *See Gulf Offshore Co.*, 453 U.S. at 480-81; *Tenn. Gas Pipeline*, 87 F.3d at 153-54 ("OCSLA makes federal law exclusive in its regulation of the OCS, but in order to fill the substantial gaps in the coverage of federal law, OCSLA adopts the 'applicable and not inconsistent' laws of the adjacent states as surrogate federal law.").  Thus, "[i]f the state causes of action alleged in the complaint are applicable to this case, it is only because state law has been adopted as surrogate federal law ***through OCSLA***."  *White v. Chevron, USA, Inc.*, Civ. A. No. 90-0113, 1990 WL 28167, at *1 (E.D. La. Mar. 14, 1990).

The nature of the claim and the substantive law that applies are not at issue; rather, the relevant question for purposes of jurisdiction under 43 U.S.C. § 1349(b)(1) is whether the dispute has the required connection to operations on the OCS.  *See, e.g.*, *Recar v. CNG Producing Co.*, 853 F.2d 367, 369 (5th Cir. 1988).  Jurisdiction depends on the factual and logical connection to operations on the OCS, not on the precise cause of action or substantive legal theory alleged.  *Id.* at 370; *see EP Operating Ltd. P'ship*, 26 F.3d at 566 (action to determine ownership rights was within OCSLA jurisdiction); *Simms v. Roclan Energy Servs., Inc.*, 137 F. Supp. 2d 731, 734 (W.D. La. 2001) (denying motion to remand — "[w]hen the Court examines whether removal of a claim was proper, it is examining the jurisdictional base, not the substantive law which might apply to the claim"); *see also Gulf Offshore Co.*, 453 U.S. at 481 ("[A] personal injury action involving events occurring on the Shelf is governed by federal law, the content of which is borrowed from the law of the adjacent State . . . .").  It thus makes no

difference that the State seeks to characterize its claims as those exclusively under a particular state statute where, as here, Plaintiff's action arose from the BP Defendants' exploration and operations on the Shelf.

In light of this controlling law, the fact that Plaintiff has failed here to refer specifically to OCSLA in the Petition is immaterial. This Court has routinely held that the failure to refer specifically to OCSLA does not transform a federal claim over which federal courts have jurisdiction into a state law claim. *See, e.g.*, *Fields v. Pool Offshore, Inc.*, No. Civ. A. 97-3170, 1997 WL 767634, at *3 (E.D. La. Dec. 8, 1997) ("The fact that plaintiff's state court petition did not invoke jurisdiction under OCSLA is not dispositive of [the removal] issue."); *White*, 1990 WL 28167, at *1 ("Although in this case, the plaintiffs did not plead OCSLA in their state court petition but only alleged state causes of action, the statute and the jurisprudence clearly demonstrate that because this action arose on the outer continental shelf, the plaintiffs' exclusive remedy is pursuant to OCSLA."); *see also Cameron Offshore Boats, Inc. v. Alpine Ocean Seismic Surveys*, 862 F. Supp. 1578, 1584 (W.D. La. 1994) (court had jurisdiction although "petition does not specifically refer to OCSLA"). It is therefore irrelevant that Plaintiff attempts to base its claim exclusively on Louisiana's wildlife statute, La. R.S. § 56:40.1 *et seq.*

Nor is it relevant that Plaintiff has sought to circumvent OCSLA by asserting that it "will never at any time in the future plead, any claim or cause of action arising under any federal law . . . ." Pet. ¶ 14. The Fifth Circuit has found OCSLA jurisdiction even where the plaintiff "admits forthrightly that it attempted to craft its lawsuit to avoid federal removal jurisdiction." *Tenn. Gas Pipeline*, 87 F.3d at 152. Plaintiff thus cannot avoid the force of OCSLA through clever pleading. *See White*, 1990 WL 28167, at *1 ("A plaintiff cannot defeat removal [under OCSLA] by 'artfully' omitting essential federal issues from a state court petition.").

### 2. The "Efficient Exploitation Of Resources" Line of OCSLA Cases Does Not Defeat Removal Of This Case.

Plaintiff asks this Court not to apply the "but for" test for OCSLA jurisdiction established by Fifth Circuit precedent in favor of an inquiry into whether a particular case would "affect the efficient exploitation of resources from the OCS and/or threaten the total recovery of federally-owned resources." Remand Mem. at 5 (quoting *EP Operating Ltd. P'ship*, 26 F.3d at 570, and citing *United Offshore Co.*, 899 F.2d 405). Plaintiff ignores that the "efficient exploitation" and "but for" tests exist side by side and in harmony in the Fifth Circuit's OCSLA jurisprudence, and that they are fully compatible constructions of Section 1349's "arising out of, or in connection with" factual nexus requirement.

As *EP Operating* itself recognizes, OCSLA is "intended 'to govern **the full range of potential legal problems** that might arise in connection with operations on the Outer Continental Shelf.'" 26 F.3d at 569 (emphasis added). OCSLA jurisdiction is thus meant to cover, among a vast array of other categories of cases, both contract/property cases on one hand and tort cases on the other. In contract or in property cases, the courts within this Circuit tend to speak in terms of what affects the efficient exploitation of resources. *See, e.g., id.* at 570 ("The instant suit is a partition action to determine ownership rights."); *United Offshore*, 899 F.2d at 406 (case involved battle for control over a natural gas pipeline between two equal partners to a joint venture). But in tort cases, the same courts tend to speak in terms of the "but for" test. *See, e.g.*, *Tenn. Gas Pipeline*, 87 F.3d at 154 (tug allision with rig platform); *Barger*, 692 F.2d 340 (helicopter crash). This is not surprising. Any attempt by a plaintiff to shunt the OCSLA tort cases to the side, out of view, in favor of a myopic focus on the OCSLA contract and property cases has no basis and should be rejected, especially when the claim here is that state-superintended wildlife have been taken (*i.e.*, harmed in a tort-like fashion) as a result of the

13

operations and oil spill on the Shelf.  *See also EP Operating Ltd. P'ship*, 26 F.3d at 570 (noting that "***a** primary purpose* of the OCSLA was 'the efficient exploitation of the minerals of the OCS,'" ***not*** that this is the ***only*** purpose of OCSLA) (emphasis added).  *See also supra* at pp.4-5 (observing that 43 U.S.C. § 1802 sets forth numerous purposes for OCSLA).

OCSLA states that as long as cases "arise out of" or "in connection with" operations on the Shelf, then jurisdiction under OCSLA exists over such cases.  Clearly, cases like this wildlife case that satisfy the "but for" test must, of logical necessity also satisfy the statutory "arise out of"/"in connection with" standard.  The "efficient exploitation" of Shelf resources line of cases also satisfy the "arise out of"/"in connection with" OCSLA jurisdictional standard, as this is simply a variant that seems more fitting for contract and property cases associated with the Shelf.  Hence, the "but for" and "efficient exploitation" cases comfortably coexist as parts of the same "whole" of OCSLA jurisdictional case law in the Fifth Circuit.

At any rate, even if the more contractually oriented "efficient exploitation" of resources test is applied to cases arising out of or in connection with the *Deepwater Horizon* incident, Plaintiff's present action easily satisfies that test.  In *EP Operating*, the Fifth Circuit addressed "a partition action to determine ownership rights" of offshore facilities that had lain dormant for the previous three years.  26 F.3d at 570.  The Fifth Circuit readily found OCSLA jurisdiction.  Similarly, in *United Offshore*, the Fifth Circuit held that it was "clear" that OCSLA jurisdiction applied to a claim involving a contractual dispute over the control of an entity that operated a gas pipeline, even though that claim was "one step removed" from actual operation on the OCS.  899 F.2d at 407.  This case is easier, with OCSLA jurisdiction being even more readily apparent.  It strains credulity for Plaintiff to argue that a lawsuit brought to recover damages stemming from operations and an oil spill on the Shelf would not "affect the efficient exploitation of resources

from the OCS and/or threaten the total recovery of federally-owned resources." *EP Operating Ltd. P'ship*, 26 F.3d at 570. Tort rules and statutory liability rules will inevitably affect primary conduct concerning how mineral exploitation activities on the Shelf are conducted. *Compare* RESTATEMENT (SECOND) OF TORTS § 286 (recognizing that tort law effectively sets "standard[s] of conduct," as do statutes or regulations). The imposition of Louisiana wildlife statute liability would clearly affect how mineral lessees on the Shelf would carry out their operations. And such liability would also clearly affect the balance struck in OCSLA between promoting economic interests and protecting environmental values. *See* 43 U.S.C. § 1802(2); *NRDC v. Hodel*, 865 F.2d 288, 291-92 (D.C. Cir. 1988). Accordingly, OCSLA jurisdiction is fully available here even under Plaintiff's preferred test.[1]

## II.  PLAINTIFF'S ARGUMENT REGARDING DIVERSITY JURISDICTION IS IRRELEVANT.

The Court need not address Plaintiff's red herring argument regarding diversity jurisdiction, because the BP Defendants have never asserted diversity of the parties as a basis for jurisdiction and do not do so now. *See* Notice of Removal ¶ 22 ("This matter may be removed

---

[1] None of the District Court cases that Plaintiff string cites in a single footnote, *see* Remand Mem. at 6 n. 16, warrants a different result. Those cases involve ***(1) a lawsuit that arose out of the independent cause of faulty medical treatment at an onshore medical facility*** where a plaintiff injured on the OCS was treated, *see Sea Robin Pipeline Co. v. New Mexico Head Clinic Facility*, Civ. A. No. 94-1450, 1996 WL 84441 (E.D. La. Feb. 26, 1996); or ***(2) contractual (or assignment) disputes*** "regarding the payment/price of services which have been already rendered, not provisions governing production or development," *NXC Co., LLC v. Samedan Oil Corp.*, No. Civ. A. 03-3284, 2004 WL 203079, at *3 (E.D. La. Jan. 28, 2004); *see also Brooklyn Union Exploration Co. v. Tejas Power Corp.*, 930 F. Supp. 289, 291 (S.D. Tex. 1996) (contractual dispute concerning "provisions governing the price of gas, not provisions governing its production or development"); *Harris Trust & Saving Bank v. Entergy Assets Int'l Corp.*, 124 F.R.D. 115, 119 (E.D. La. 1989) (mere "fact that ***one of*** the assignments involves an oil and gas lease under the OCSLA does not" give rise to federal jurisdiction) (emphasis added). The factual circumstances in those cases are not remotely like the Plaintiff's claims here, which directly stem from an explosion of the *Deepwater Horizon* rig on the Shelf and the resulting spill and alleged impacts on state wildlife.

without regard to the citizenship or residence of the parties in accordance with 28 U.S.C. § 1441(b) . . . .").[2]

### III. GIVEN THE PRESENCE OF STRONG AND PLAIN GROUNDS FOR OCSLA REMOVAL UNDER FIFTH CIRCUIT PRECEDENT, THE COURT SHOULD REJECT PLAINTIFF'S REQUEST FOR COSTS AND ATTORNEYS' FEES.

If the Court agrees with the merits of the OCSLA removal arguments detailed above, then it goes without saying that the Plaintiff's request for attorney's fees and costs must also be rejected. Only if the Court were to disagree with the BP Defendants' invocation of the OCSLA jurisdictional statute under the case law in this Circuit and hold that it lacked subject matter under OCSLA's Section 1349, *see* 28 U.S.C. § 1447(c), would this Court then have to decide "whether [BP] had objectively reasonable grounds to believe the removal was legally proper." *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 293 (5th Cir. 2000). But any such request for costs and attorneys' fees under 28 U.S.C. § 1447(c) should be quickly denied unless "the removing party **lacked an objectively reasonable** basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) (emphasis added).

In this case, objectively reasonable grounds are manifest. "[W]hen an objectively reasonable basis exists, fees should be denied." *Id.* Contrary to Plaintiff's arguments, a complaint need not specify a federal claim on its face in order for federal jurisdiction to apply under OCSLA, and OCSLA jurisdiction clearly applies to the BP Defendants' operations, which are intimately connected to the Shelf. Thus, even if this Court disagreed with the BP Defendants' arguments, Plaintiff has not met its high burden of showing objective unreasonableness. *See Valdes*, 199 F.3d at 293 (concluding that a court "need not express an

---

[2] Removal was premised exclusively on non-diversity grounds. *See* Notice of Removal ¶ 25. The indication in Paragraph 30 of the removal notice that the parties are non-diverse was merely intended to track information referenced in 28 U.S.C. § 1441(b).

16

opinion" on a removing party's authorities "except to say that [the removing party] could conclude from [them] that its position was not an unreasonable one").

## CONCLUSION

For these reasons, the BP Defendants respectfully request that Plaintiff's Motion to Remand to State Court be denied, that fees and costs be denied, and that this action be maintained in federal court.

Respectfully submitted,

s/ Paul Matthew Jones

| | |
|---|---|
| Donald R. Abaunza (Bar #2273) | Paul Matthew Jones (Bar #19641) |
| R. Keith Jarrett (Bar #16984) | April L. Rolen-Ogden (Bar #30698) |
| Don K. Haycraft (Bar #14361) | Stuart T. Welch (Bar #31359) |
| Jonathan A. Hunter (Bar #18619) | **LISKOW & LEWIS** |
| Mark D. Latham (Bar #19673) | 822 Harding Street |
| Robert E. Holden (Bar #6935) | Lafayette, LA  70503 |
| **LISKOW & LEWIS** | Telephone:     (337) 232-7424 |
| 701 Poydras Street, Suite 5000 | Facsimile:      (337) 267-2399 |
| New Orleans, LA  70139-5099 | |
| Telephone:     (504) 581-7979 | |
| Facsimile:      (504) 556-4108 | |

*Attorneys for BP Exploration & Production, Inc.,
BP Products North America, Inc., and
BP America Inc.*

| | |
|---|---|
| Jeffrey Bossert Clark | Richard C. Godfrey, P.C. |
| Joseph A. Eisert | J. Andrew Langan, P.C. |
| **KIRKLAND & ELLIS LLP** | Andrew B. Bloomer, P.C. |
| 655 Fifteenth Street, N.W. | **KIRKLAND & ELLIS LLP** |
| Washington, DC 20005 | 300 North LaSalle Street |
| Telephone:     (202) 879-5960 | Chicago, IL 60654 |
| Facsimile:      (202) 879-5200 | Telephone:     (312) 862-2000 |
| | Facsimile:      (312) 862-2200 |

*Of Counsel*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing **BP DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND TO STATE COURT** has been served upon all counsel of record by placing same in the United States mail, properly addressed and postage prepaid, this 13th day of July, 2010.

s/ Paul Matthew Jones