UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **In re: DEEPWATER HORIZON** | * | CIVIL ACTION NO. 10-CV-1156 |
| | * | |
| | * | SECTION: J    MAG. 1 |
| **Applies to:** | * | |
| | * | JUDGE BARBIER |
| *All Cases.* | * | |
| | * | MAGISTRATE SHUSHAN |
| | * | |
| * * * * * * * * * * * * | | |

**MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION TO COMPEL**

Plaintiffs respectfully submit the following Memorandum in Support of their Motion to Compel the BP Defendants to produce any and all formation, trust and/or agency documents regarding the establishment of an "Independent Claims Facility" and/or Oil Workers Injury Fund and/or Escrow Account:

**MAY IT PLEASE THE COURT:**

As the designated "responsible party" under the Oil Pollution Act of 1990, the BP Defendants have been processing interim (and perhaps other) claims under 33 U.S.C. §§ 2705(a) and/or 2713.

Numerous questions arose regarding the administration of the claims process – including both "claims" issues and "legal" issues – which the parties were continuing to explore and attempt to resolve on an informal basis.[1]

On or around June 16, 2010, the White House issued a Press Release announcing that an "Independent Claims Facility" and $20 billion Escrow Account would be established by BP.[2]

Based, in part, on the various statements of Mr. Feinberg and his partner, Mr. Rozen, several questions began to arise regarding the Escrow Account, the Oil Rig Workers' Fund, and the "Independent" Claims Facility. With respect to the Escrow Account, for example:

- What are the precise requirements and restrictions on the Escrow Account?

- Whether, in particular, for example, assets in the Escrow Account can be used to reimburse BP for its own clean-up costs?

- Which BP entity (or entities) is (are) obligated to fund the Escrow Account?

- Whether, and if so how, funds which are supposedly obligated or otherwise dedicated to the Escrow Account might be prioritized or securitized or otherwise protected from potential insolvency or bankruptcy?

- What is the precise mechanism by which the Escrow Account is replenished if its assets are depleted?

- What is the mechanism by which proceeds are actually released from the Account, either to a private claimant, or Governmental authority, or perhaps to the Claims Facility Administrator, in satisfaction of a judgment, settlement or other determination?

---

[1] *See generally,* JOINT STATUS REPORT [Doc 127] (June 16, 2010), pp.8-9; *see also, e.g.,* LETTER TO D.K. HAYCRAFT (June 1, 2010) (Exhibit "A"); LETTER TO D.K. HAYCRAFT (June 8, 2010) (Exhibit "B").

[2] *See* WHITE HOUSE PRESS RELEASE (June 16, 2010) (Exhibit "C").

- Who, in particular, will serve as the Account's trustee or trustees?

With respect to the Claims Facility:

- Whether submission of a claim in accordance with the standards and procedures of the Claims Facility would satisfy all of the jurisdictional or other "presentment" requirements under the Oil Pollution Act of 1990 ("OPA")?

- Whether a claim which had been made but not completely resolved in the Claims Facility could be subsequently supplemented and/or amended in litigation without re-presenting the claim to the Responsible Party and/or the Claims Facility?

- Whether the applicable prescriptive period or statute of limitations would be tolled while a claimant seeks redress from the Claims Facility?

- Why – when OPA provides that "payment or settlement of a claim for interim, short-term damages representing less than the full amount of damages to which the claimant ultimately may be entitled shall not preclude recovery by the claimant for damages not reflected in the paid or settled partial claim"[3] and the White House Press Release indicates that "dissatisfied claimants maintain all current rights under law, including the right to go to court" while decisions of the Claims Facility "shall be binding on BP"[4] – would claimants, in order to seek payments for partial or interim damages thru the Claims Facility, be required to provide BP with a full and unconditional release?

While, perhaps, some of these questions could be considered "claims" issues to be addressed by Mr. Feinberg, these questions also seem to implicate essentially "legal" issues which, it would

---

[3] 33 U.S.C. 2705(a).
[4] *See* EXHIBIT "C".

seem, need to be addressed formally by BP.[5]  Accordingly, on July 3, 2010, Interim Liaison Counsel requested, by letter, any and all trust documents, escrow agreements, or other formation documents or agreements to which BP is a signatory, relating to the establishment or administration of either the Claims Facility, the Escrow Account, or the Oil Rig Workers' Fund.[6]

Interim Liaison Counsel followed up with BP's Counsel on July 14th and again on July 20th.[7] The parties conducted a meet and confer by telephone on July 20, 2010, at which time Counsel for BP acknowledged that BP had no formal response to the July 3rd letter and agreed that Plaintiffs could represent to the Court that the dispute had not been amicably resolved under Local Rule 37.1.

Undersigned counsel understand that the current BP Claims Process will soon be absorbed within the "Independent" Claims Facility.  In order to properly advise plaintiffs regarding the potential legal implications associated with their possible participation in the Claims Facility, counsel for plaintiffs need to understand the specific scope of authority that Mr. Feinberg is operating under, as well as the particulars regarding the establishment and administration of the Escrow Account.  Accordingly, Plaintiffs respectfully suggest that these circumstances constitute "good cause" for seeking the formation documents requested on July 3rd under Paragraph 7 of the Interim Case Management Order.

---

[5] It may be, of course, that BP has vested Mr. Feinberg with the authority to answer some or all of these questions on BP's behalf – but, in that case, Plaintiffs would like to see the formal grant of authority to Mr. Feinberg from BP.

[6] *See* LETTER TO D.K. HAYCRAFT (July 3, 2010) (Exhibit "D").

[7] *See* E-MAIL TO D.K. HAYCRAFT (July 20, 2010) (Exhibit "E").

**Conclusion**

For the above and foregoing reasons, the BP Defendants should be compelled to produce any and all trust documents, escrow agreements, or other formation documents or agreements to which BP is a signatory, relating to the establishment or administration of either the Claims Facility, the Escrow Account, or the Oil Rig Workers' Fund.

This 20th day of July, 2010.

Respectfully submitted,

| | |
|---|---|
| /s/   Stephen J. Herman | /s/ James Parkerson Roy |
| **Stephen J. Herman**, La. Bar No. 23129 | **James Parkerson Roy**, La. Bar No. 11511 |
| **HERMAN HERMAN KATZ & COTLAR LLP** | **DOMENGEAUX WRIGHT ROY & EDWARDS LLC** |
| 820 O'Keefe Avenue | 556 Jefferson Street, Suite 500 |
| New Orleans, Louisiana 70113 | Lafayette, Louisiana 70501 |
| Telephone: (504) 581-4892 | Telephone: (337) 233-3033 |
| Fax No. (504) 569-6024 | Fax No. (337) 233-2796 |
| E-Mail: sherman@hhkc.com | E-Mail: jimr@wrightroy.com |
| *Interim Plaintiffs Liaison Counsel.* | *Interim Plaintiffs Liaison Counsel.* |

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that the above and foregoing Memorandum will be electronically filed into the record using the Court's EFC filing system, thereby effecting service on all Counsel of Record;

IN ADDITION, the Memorandum will be served, *via* E-MAIL, upon all known counsel of record will cases relating to the Deepwater Horizon explosion, fire and resulting oil spill pending in this District and Section.

This <u>20th</u> day of <u>July</u>, <u>2010</u>.

/s/  Stephen J. Herman and James Parkerson Roy