UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re: DEEPWATER HORIZON | * | CIVIL ACTION NO. 10-1156 (LEAD) |
| | * | c/w |
| | * | CIVIL ACTION NOS. 10-1757, 10- |
| | * | 1059, and 10-1060 (MEMBERS) |
| | * | |
| | * | |
| | * | JUDGE CARL J. BARBIER |
| | * | |
| | * | |
| | * | |
| | * | MAGISTRATE JUDGE SALLY |
| | * | SHUSHAN |
| | * | |

------------------------------------------------------------------

## BP DEFENDANTS' COMBINED MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTIONS TO REMAND TO STATE COURT (PARISHES OF LAFOURCHE, TERREBONNE, AND ST. TAMMANY)

The State of Louisiana, by and through the District Attorneys for the Parishes of Lafourche, Terrebonne, and St. Tammany (collectively, the "Parishes" or "Plaintiffs"), filed in Louisiana state court three separate Petitions for Damages against BP Exploration & Production, Inc., BP Products North America, Inc., and BP America, Inc. (collectively, the "BP Defendants") under the Louisiana wildlife statute, La. R.S. § 56:40.1 *et seq*. *See* Case Nos. 10-CV-1757, -1759, & -1760. Plaintiffs' Petitions assert actions arising out of the BP Defendants' exploration and drilling operations on the Outer Continental Shelf ("OCS" or "Shelf") and the oil spill in the Gulf of Mexico. The BP Defendants removed the actions to this Court pursuant to 43 U.S.C. § 1349(b)(1)(A) (the federal Outer Continental Shelf Lands Act ("OCSLA")), and Plaintiffs have now moved to remand the cases to state court. The three Petitions arise out of the same set of facts, and Plaintiffs' legal theories supporting their bids for remand are similar. Accordingly, the

BP Defendants file this combined memorandum to oppose Plaintiffs' motions to remand to state court.

Plaintiffs' motions have no basis in fact or law, and should be denied. This Court has original jurisdiction under section 1349 of OCSLA. By its terms, section 1349(b)(1)(A) grants federal District Courts wide-ranging jurisdiction to hear and decide any action "arising out of, or in connection with" exploration and drilling operations on the Outer Continental Shelf. Under established Fifth Circuit precedent, a District Court has original subject matter jurisdiction over a plaintiff's action if it would not have arisen "but for" exploration and drilling operations conducted on the OCS. *See, e.g., Tenn. Gas Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150, 154 (5th Cir. 1996). OCSLA is an *independent grant* of federal jurisdiction, and hence is not subject to the well-pleaded complaint rule. *See Amoco Prod. Co. v. Sea Robin Pipeline Co.*, 844 F.2d 1202, 1205 (5th Cir. 1988). Another *non sequitur* is the Plaintiffs' sovereign immunity argument for removal. The Eleventh Amendment and principles of state sovereign immunity clearly pose no barrier to removal of cases brought by a State *against* another party. *See, e.g., Oklahoma ex rel. Edmondson v. Magnolia Marine Transp. Co.*, 359 F.3d 1237, 1239-40 (10th Cir. 2004). Plaintiffs themselves chose to initiate this litigation; they are not being subjected to participation in a court action against their will.

Plaintiffs' remaining arguments for removal are not arguments directed at the scope of OCSLA jurisdiction in section 1349 at all, but instead go to the entirely different question of which among competing bodies of law would substantively apply to control a particular dispute. For instance, Plaintiffs are fond of invoking cases concerning 43 U.S.C. § 1333(b), which bears on the question of when employee injuries are governed by state workers' compensation laws versus when such injuries will be governed by the federal Longshore and Harbor Workers'

2

Compensation Act ("LHWCA"). *See, e.g.,* Terrebonne Remand Mem. at 4 n.8. Under the applicable case law, and by its very text, section 1333(b) applies the LHWCA only to "*any injury occurring* as the result of operations conducted *on the outer Continental Shelf.*" But that very separate "choice of law" question is unripe and irrelevant when the underlying claims do not involve workplace injury, as here. Most importantly, the workers' compensation cases that Plaintiffs rely on so heavily have absolutely nothing to do with the propriety of removing cases under OCSLA's jurisdictional provision, which attaches OCSLA jurisdiction not only to injuries occurring "*on* the Outer Continental Shelf," but instead extends such jurisdiction much more broadly to assign to federal courts the authority to hear cases "arising out of, or in connection with" Shelf operations. *See* 43 U.S.C. § 1349(b)(1)(A); *Dahlen v. Gulf Crews, Inc.,* 281 F.3d 487, 492 (5th Cir. 2002).

Here, there is no dispute that Plaintiffs' actions arise from the BP Defendants' operations on the OCS; indeed, Plaintiffs concede as much. Had the BP Defendants not been performing exploratory and drilling operations on the OCS, Plaintiffs would have had no occasion to file the Petitions concerning harm to wildlife allegedly caused by those operations and the resulting spill. Removal is proper and this Court has subject matter jurisdiction. Remand should be denied.

## BACKGROUND

The State of Louisiana, by and through the District Attorneys for the State Parishes of Lafourche, Terrebonne, and St. Tammany, filed three separate Petitions for Damages against the BP Defendants in Louisiana state court. *See* Lafourche Pet. (filed June 15, 2010); St. Tammany Pet. (filed May 18, 2010); Terrebonne Pet. (filed May 17, 2010). The three petitions asserted claims under La. R.S. § 56:40.1 *et seq.* for damage to wildlife resulting from the fire and explosion on the *Deepwater Horizon* rig located in the Gulf of Mexico on the Shelf.

3

Plaintiffs' allegations are clear, on their face, that their claims arise from and are inextricably connected to the BP Defendants' operations on the OCS, including the exploration, development, and/or production of oil and other minerals in the subsoil and seabed of the OCS. Specifically, Plaintiffs allege that:

- The BP Defendants "were the owners of the [United States Minerals Management Service] Mineral Lease G32306 . . . , and the minerals produced from the 'Lease.'" Lafourche Pet. ¶ 6; Terrebonne Pet. ¶ 7; St. Tammany Pet. ¶ 7.

- "[A]t all times material herein, BP EXPLORATION & PRODUCTION INC. was the operator of the Lease." Lafourche Pet. ¶ 7; Terrebonne Pet. ¶ 8; St. Tammany Pet. ¶ 8.

- "On April 20, 2010, a fire, explosion and resulting spill of oil and other minerals, contaminants and/or pollution not yet identified occurred in the Gulf of Mexico, located approximately 52 miles southeast of the port of Venice, Louisiana . . . ." Terrebonne Pet. ¶ 9; St. Tammany Pet. ¶ 9; *see* Lafourche Pet. ¶ 8 ("On April 20, 2010, a fire, explosion and resulting spill of oil and other minerals, contaminants and/or pollution including disbursements not yet identified occurred at the site of the Deep Water Horizon rig operated on the Lease, in the Gulf of Mexico, located approximately 52 miles southeast of the port of Venice, Louisiana . . . .").

- "The oil spill was uncontained and has entered into and continues to enter into the waters of the State of Louisiana, including [Terrebonne and St. Tammany Parishes] and the waters of the state in the Gulf of Mexico . . . ." Terrebonne Pet. ¶ 10; St. Tammany Pet. ¶ 8; *see* Lafourche Pet. ¶ 7 (similar).

- "Defendants at all times material herein owned the contents of the oil spill and/or caused the oil spill which continues to date to inflict death and injury to the fish, wild birds, wild quadrupeds, and other wildlife and aquatic life in" the three Parishes. Terrebonne Pet. ¶ 12; St. Tammany Pet. ¶ 15; *see also* Lafourche Pet. ¶ 12 ("As a result of the spill, the Defendants have unlawfully killed, and/or injured fish, wild birds, wild quadrupeds, and other wildlife and aquatic life in violation of [La. R.S. § 56:40.1] within the Parish of Lafourche, State of Louisiana.").

These allegations clearly establish that Plaintiffs complain of activities that occurred on the OCS as a result of the *Deepwater Horizon* incident. Plaintiffs nevertheless each sought in identical language to avoid federal jurisdiction by alleging that they purportedly "do[] not plead, and will never at any time in the future plead, any claim or cause of action arising under any

4

federal law, and assert[] no such claims or cause of action herein." Terrebonne Pet. ¶ 16; St. Tammany Pet. ¶ 19; Lafourche Pet. ¶ 14.

The BP Defendants removed all three Plaintiffs' claims on June 17, 2010, and Plaintiffs have now moved to remand to state court.

**ARGUMENT**

## I.    THIS COURT HAS ORIGINAL JURISDICTION OVER THESE CASES UNDER OCSLA.

### A.    Statutory Framework.

National authority over the Shelf is exercised in interconnected ways — through (A) OCSLA's assertion of federal sovereignty, 43 U.S.C. § 1333(a)(1); (B) OCSLA's "surrogate federal law" provision, 43 U.S.C. § 1333(a)(2)(A); and (C) OCSLA's jurisdictional provision, 43 U.S.C. § 1349.  Because Plaintiffs' briefs repeatedly swirl the tests for these various provisions together confusingly, the BP Defendants lay them out in some detail here.

#### 1.    Section 1331(a)(1) — OCSLA's Assertion Of Federal Sovereignty And the Paramount Nature of Federal Purposes on the Shelf.

OCSLA declares that "the subsoil and seabed of the outer Continental Shelf appertain to the United States and are subject to its jurisdiction, control, and power of disposition," 43 U.S.C. § 1332(1), thus establishing "national authority over the OCS at the expense of both foreign governments and the governments of the individual states." *Tenn. Gas Pipeline*, 87 F.3d at 153. Under 43 U.S.C. § 1333(a)(1),

> The Constitution and laws and civil and political jurisdiction of the United States *are extended to* the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and *all installations and other devices permanently or temporarily attached to the seabed*, which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom, or any such installation or other device (other than a ship or vessel) for the purpose of transporting such resources, to the same extent *as if the*

5

> *outer Continental Shelf were an area of exclusive Federal*
> *jurisdiction located within a State . . . .*

The purposes of OCSLA are many, and embrace not just the efficient exploitation of resources on the Shelf, but also provide for (i) protection of the environment, including wildlife, (ii) consideration of the interests and input of affected States and local governments, and (iii) harmonization of OCSLA with the operations of the Oil Pollution Act of 1990, which establishes the Oil Spill Liability Trust Fund. Specifically, OCSLA's relevant purposes are to:

\* \* \*

(2) *preserve, protect, and develop oil and natural gas resources* in the Outer Continental Shelf in a manner which is consistent with the need (A) to make such resources available to meet the Nation's energy needs as rapidly as possible, (B) *to balance orderly energy resource development with protection of the human, marine, and coastal environments*, (C) to insure the public a fair and equitable return on the resources of the Outer Continental Shelf, and (D) to preserve and maintain free enterprise competition;

\* \* \*

(4) *provide States, and through States, local governments*, which are impacted by Outer Continental Shelf oil and gas exploration, development, and production *with comprehensive assistance in order to anticipate and plan for such impact*, and thereby to assure adequate protection of the human environment;

\* \* \*

(6) *assure that States, and through States, local governments*, which are directly affected by exploration, development, and production of oil and natural gas *are provided an opportunity to participate in policy and planning decisions* relating to management of the resources of the Outer Continental Shelf;

\* \* \*

(8) *establish an oilspill liability fund* to pay for the prompt removal of any oil spilled or discharged as a result of activities on the Outer Continental Shelf and for any damages to *public or private interests* caused by such spills or discharges;

\* \* \*

43 U.S.C. § 1802 (emphasis added).

6

## 2. Section 1333(a)(2) — OCSLA's Surrogate Federal Law Provision.

OCSLA "makes federal law exclusive in its regulation of the OCS . . . ." *Tenn. Gas Pipeline*, 87 F.3d at 153; *see also Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 480-81 (1981). OCSLA achieves this exclusive federal control in part through 43 U.S.C. § 1333(a)(2)(A) (emphasis added), which provides, in relevant part:

> To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, *the civil and criminal laws of each adjacent State, now in effect or hereafter adopted, amended, or repealed are declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf,* and *artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf* . . . . All of such applicable laws shall be administered and enforced by the appropriate officers and courts of the United States.

Under this framework, "gaps" in substantive federal law are filled by "the 'applicable and not inconsistent' laws of the adjacent States," and state laws, when they are applicable to the Shelf at all, are thus adopted "as surrogate federal law," meaning that such state laws do not apply of their own force. *Gulf Offshore Co.*, 453 U.S. at 480-81; *see also Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 349 (5th Cir. 1999); *EP Operating Ltd. P'ship v. Placid Oil Co.*, 26 F.3d 563, 566 (5th Cir. 1994); *Union Tex. Petroleum Corp. v. PLT Eng'g, Inc.*, 895 F.2d 1043, 1052 (5th Cir. 1990) ("Any other result here would frustrate the Congressional purpose that the OCS be treated as an area of exclusive federal jurisdiction within the state where state law will apply to fill in the gaps in the federal law."); *Laredo Offshore Constructors, Inc. v. Hunt Oil Co.*, 754 F.2d 1223, 1228 (5th Cir. 1985) ("If the OCSLA was intended only to govern those cases directly implicating the regulatory and proprietary purposes of the Act, there would have

been no need to make available such a broad legal base, including both civil and criminal laws, upon which courts could draw to fill in anticipated gaps in federal law.").

Any cases that fall within OCSLA's assertion of national sovereign authority under section 1333(a)(1), but that are not governed by section 1333(a)(2)(A), are governed by substantive OCSLA provisions or by federal maritime law. *See, e.g., Tenn. Gas Pipeline,* 87 F.3d at 153 (asserting OCSLA jurisdiction over maritime claim affecting the Shelf); *see also, e.g.,* David W. Robertson, *The Outer Continental Shelf Lands Act's Provisions on Jurisdiction, Remedies, and Choice of Law: Correcting the Fifth Circuit's Mistakes,* 38 J. MAR. L. & COM. 487, 508, 510-11 (2007) ("Section 1333(a)(2)(A) leaves admiralty and maritime law applicable to actual vessels and other matters falling within admiralty jurisdiction.").[1]

Taken together, section 1333(a)(2)(A), substantive OCSLA provisions, and maritime law thus provide a body of law that is "intended 'to govern the *full range* of potential legal problems that might arise in connection with operations on the Outer Continental Shelf.'" *EP Operating Ltd. P'ship,* 26 F.3d at 569 (citing *Laredo Offshore,* 754 F.2d at 1228) (emphasis added).

Lastly, to the extent that the statutory text and Fifth Circuit precedents leave *any* room for doubt on this issue, those doubts are easily resolved by reference to the statute's legislative history. In amending OCSLA to expand its coverage in 1978, the House Select Committee on the Outer Continental Shelf specifically observed in its report that:

> It is thus made clear that *Federal* law is to be applicable to *all activities on all devices* in contact with the seabed for exploration,

---

[1] The Parishes of St. Tammany and Terrebonne rely on portions of Professor Robertson's presumptuously titled article that criticize clearly established Fifth Circuit case law, while neglecting to inform this Court where Fifth Circuit cases run directly contrary to their position. *See, e.g.,* St. Tammany Remand Mem. at 5-6 & n.9; Terrebonne Remand Mem. at 5-6 & n.9; *compare* Robertson, 38 J. MAR. L. & COM. at 535 (criticizing the Fifth Circuit's "[e]rroneous assertions that OCSLA § 1333(a)(2)(A) covers temporarily-attached apparatus"). The BP Defendants respectfully submit that, whatever the merits of Professor Robertson's criticisms of certain Fifth Circuit cases, those decisions remain the firmly established precedent in this Circuit. Accordingly, the BP Defendants cite Professor Robertson's article only where it sets forth propositions of law consistent with Fifth Circuit precedent, and refer to the article at all only because Plaintiffs seek to rely on it.

> development, and production. The committee intends that *Federal law is, therefore, to be applicable to* activities on drilling ships, *semi-submersible drilling rigs*, and other watercraft, when they are connected to the seabed by drillstring, pipes, or other appurtenances, on the OCS for exploration, development, or production purposes.

H.R. Rep. No. 95-590, at 128 (1977) (emphasis added), reprinted in 1978 U.S.C.C.A.N. 1450,

1534.

### 3.  Section 1349(b)(1) — OCSLA's Jurisdictional Provision.

Lastly, OCSLA grants federal District Courts broad jurisdiction to decide *any* dispute

"arising out of, or in connection with" operations conducted on the OCS:

> [T]he district courts of the United States shall have jurisdiction of cases and controversies *arising out of, or in connection with* (A) *any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals*, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals, or (B) the cancellation, suspension, or termination of a lease or permit under this subchapter . . .

43 U.S.C. § 1349(b)(1) (emphasis added). *See also EP Operating Ltd. P'ship*, 26 F.3d at 569

("[B]road reading of the jurisdictional grant of section 1349 is supported by the expansive

substantive reach of the OCSLA."); *Tenn. Gas Pipeline*, 87 F.3d at 154 (OCSLA's jurisdictional

grant is "very broad"). Precisely because the jurisdictional grant is so "broad," the Fifth Circuit

has recognized that "the Act covers a wide range of activity occurring beyond the territorial

waters of the states on the outer continental shelf of the United States." *Texaco Exploration &*

*Prod., Inc. v. AmClyde Engineered Prods. Co.*, 448 F.3d 760, 768 (5th Cir. 2006) (citations and

internal quotation marks omitted); *Walsh v. Seagull Energy Corp.*, 836 F. Supp. 411, 417 (S.D.

Tex. 1993) (observing that there can be "*no dispute*" that "the jurisdictional grant of OCSLA is *more broad* than [the coverage of OCSLA under section 1333(a)(1)]") (emphasis added).[2]

OCSLA's definitions clearly establish that section 1349(b)(1) jurisdiction encompasses all drilling activities on the Shelf.  *First*, OCSLA defines "minerals" as including "*oil*, gas, sulphur, geopressured-geothermal and associated resources . . . ."  43 U.S.C. § 1331(q) (emphasis added).  *Second*, "exploration" is defined as the "process of searching for minerals, including . . . any drilling," and "development" includes "those activities which take place following discovery of minerals in paying quantities, including geophysical activity, drilling, platform construction, and operation of all onshore support facilities, and which are for the purpose of ultimately producing the minerals discovered."  43 U.S.C. § 1331(k), (l).

And *third*, according to the Fifth Circuit, the term "operation" is to be read expansively as "the doing of some physical act."  *Sea Robin Pipeline*, 844 F.2d at 1207.  As a result, the section 1349(b) jurisdictional grant, at the very least, must be taken apply to "the entire range of legal disputes that [Congress] knew would arise relating to resource development on the Outer Continental Shelf."  *EP Operating Ltd. P'ship*, 26 F.3d at 569.  Federal jurisdiction thus depends on a factual connection between the suit and resource development on the OCS, and not on any particular legal theory of recovery plaintiffs might allege or the relief they might seek.

---

[2] Even Professor Robertson, a severe critic of the Fifth Circuit's OCSLA jurisprudence, agrees that "Section 1349(b)(1) constitutes a *broad* grant of federal-question subject matter jurisdiction to the federal district courts over cases involving OCS mineral operations."  Robertson, 38 J. MAR. L. & COM. at 517 (emphasis altered).  Section 1349(b)(1) thus:

> gives federal district courts subject matter jurisdiction over *all cases* that (a) arise out of or are connected with OCS mineral-exploitation operations or (b) involve the rights to OCS minerals.  Section 1349(b)(1) thus embraces the coverages of [sections 1333(a)(1) and 1333(a)(2)(A), among other provisions] *and goes beyond them.  By including no direct geographic limitation*, § 1349(b)(1) describes a broader coverage than [section 1333(a)(1)].  By virtue of its subject-matter sweep, *§ 1349(b)(1) covers a broader range of matters than [section 1333(a)(1)].*

*Id.* at 529-30 (emphasis added).

In short, 43 U.S.C. § 1349(b)(1)(A) creates a factual-nexus grant of independent federal jurisdiction tied to the existence of exclusive federal sovereignty over the OCS as mandated by Congress. OCSLA is a comprehensive scheme that declares absolute federal control over mineral exploration on and under the seabed on the Shelf. OCSLA also seeks to balance environmental protection against economic development. Here, by the State's own admissions, its allegations that wildlife have been taken within the Parishes of Lafourche, Terrebonne, and St. Tammany in violation of La. R.S. § 56:40.1 *et seq.* arise out of the *Deepwater Horizon* incident, which occurred on the Outer Continental Shelf in direct connection to the Defendants' oil exploration, development, and production operations.

**B.      OCSLA Establishes Jurisdiction Here Because The Parties' Dispute Would Not Have Arisen "But For" Defendants' Operations On The Outer Continental Shelf.**

The connection to Shelf operations required for purposes of establishing OCSLA jurisdiction is not a difficult standard for a removing defendant to meet. The Fifth Circuit applies an expansive "but for" test, under which the requisite factual nexus is established, and the District Court has original subject matter jurisdiction, *if the parties' dispute would not have arisen "but for" the exploration or development operations on the Outer Continental Shelf. See, e.g., Tenn. Gas Pipeline*, 87 F.3d at 155. This but-for test reflects the "broad jurisdictional grant under § 1349," because "a broad, not a narrow, reading of this grant is supported by the clear exertion of federal sovereignty over the OCS." *Id.* (quotation marks omitted).

Thus, the Fifth Circuit in *Tennessee Gas Pipeline* had "no difficulty in deciding that § 1349 grants original jurisdiction in federal court" over a claim involving an allision with a platform affixed to the OCS that was used to extract and transport minerals from the OCS. 87 F.3d at 154. "The undeniable fact is that there would not have been an accident had Tennessee Gas not built its platform to extract minerals from the OCS." *Id.* at 155. As the Fifth

Circuit reasoned, "This was clearly enough physical activity on the OCS to constitute an operation." *Id.* at 154. Similarly, in *Barger v. Petroleum Helicopters, Inc.*, 692 F.2d 337 (5th Cir. 1982), the court held that a case arising from the crash of a helicopter ferrying employees to production platforms was covered by the OCSLA because the pilot "would not have been killed in a helicopter crash in the Gulf of Mexico 'but for' the fact that he was employed to transport eleven workers to a fixed platform on the Shelf. His work furthered mineral exploration and development activities and was in the regular course of such activities." *Id.* at 340.

Likewise, in *EP Operating*, the District Court had original jurisdiction over an action to determine ownership interests in an offshore platform and other facilities, even though active operations at the site had ceased. Former operations transporting minerals and the potential for future operations established the required factual connection, even if the only remaining activity would be to dismantle the offshore facilities. *See* 26 F.3d at 567-68; *see also United Offshore Co. v. Southern Deepwater Pipeline Co.*, 899 F.2d 405, 407 (5th Cir. 1990) (District Court had jurisdiction even though underlying dispute among partners for control of pipeline was "one step removed" from actual operations on the OCS, since the dispute would affect the efficient exploitation of resources from the Gulf and thus threaten the total recovery of federally owned minerals).

Applying these well-settled standards, this Court clearly possesses jurisdiction over Plaintiffs' causes of action. Plaintiffs concede that the oil spill that forms the basis of their Petitions connects to "the [United States Minerals Management Service] Mineral Lease G32306," which is in the Gulf of Mexico, located approximately 52 miles southeast of the port of Venice, Louisiana. Terrebonne Pet. ¶ 9; St. Tammany Pet. ¶ 9; *see also* Lafourche Pet. ¶ 8. Here, there would have been no claim of damage to Louisiana wildlife "but for" the operation on

12

the OCS. Such allegations clearly establish that Plaintiffs' claims would not have arisen but for

the BP Defendants' production-related operations at the site, and hence this Court has subject

matter jurisdiction. *See Tenn. Gas Pipeline*, 87 F.3d at 155 (holding that but-for test was

satisfied when "there would have been no navigational error but for the existence of the

platform"); *Barger*, 692 F.2d at 340.

## C. Plaintiffs' Arguments That This Court Lacks Jurisdiction Have No Merit.

In the face of these clear precedents, Plaintiffs make a series of scattershot arguments, all

mistaken. For ease of analysis, the BP Defendants will address those arguments in the following

order:

- Plaintiffs rely on the "well-pleaded complaint rule," which courts are bound to apply only in the context of federal-question jurisdiction under 28 U.S.C. § 1331, and argue that their causes of action are based solely on Louisiana, not federal, law. Fifth Circuit precedents clearly foreclose Plaintiffs' argument.

- The Parishes of St. Tammany and Terrebonne argue that the Eleventh Amendment to the United States Constitution and principles of state sovereign immunity prevent removal of actions brought by States against private parties. A wealth of cases contradicts this argument, as well.

- Plaintiffs argue that a series of factors that may determine the *governing substantive law* in OCSLA cases under sections 1333(b) and 1333(a)(2) (what some courts call the "choice of law" issue under OCSLA) — including the *situs* of the tort, the nature of a rig's attachment to the seabed, and whether the claim is governed by federal maritime or state law — somehow combine to divest this Court of federal *jurisdiction* under a different provision of OCSLA, section 1349(b)(1). Although plaintiffs' arguments are sometimes obscure, suffice to say that (1) the Court need not determine the content of governing substantive law in these actions in ruling upon plaintiffs' remand motions; and (2) the Court has jurisdiction over these actions under section 1349(b)(1) notwithstanding the governing law determination. *See, e.g., Simms v. Roclan Energy Servs., Inc.*, 137 F. Supp. 2d 731, 734 (W.D. La. 2001) (denying motion to remand to state court in the OCSLA context because "*[w]hen the Court examines whether removal of a claim was proper, it is examining the jurisdictional base, not the substantive law which might apply to the claim*") (emphasis added).

13

As explained in more detail below, none of Plaintiffs' arguments has any merit, and this Court accordingly has jurisdiction over these actions.

> **1.     The Well-pleaded Complaint Rule Is No Obstacle To Removal Under OCSLA.**

Plaintiffs argue that this Court lacks jurisdiction over any case removed to federal courts on a non-diversity basis — including cases under OCSLA — "unless it appears from the face of the complaint that determination of the suit depends upon a question of federal law." Lafourche Remand Mem. at 7; *see also* St. Tammany Remand Mem. at 6-7 (similar); Terrebonne Remand Mem. at 6-7 (similar). Plaintiffs are incorrect and posit a false dichotomy by which jurisdiction in removed cases must be premised either on diversity jurisdiction under 28 U.S.C. § 1332 or on federal question jurisdiction under 28 U.S.C. § 1331.

In reality, there is also a third category of jurisdiction that properly supports the removal of cases from state court to federal court — statutory grants of independent jurisdiction (such as OCSLA) set up outside of the section 1331 or 1332 frameworks. Fifth Circuit precedent clearly establishes that the failure to specify federal law on the face of the complaint poses no bar to federal court jurisdiction under OCSLA. *See Tenn. Gas Pipeline*, 87 F.3d at 152 (holding that court had removal jurisdiction "even assuming that . . . [plaintiff's] well-pleaded complaint asserts a maritime claim"); *Sea Robin Pipeline Co.*, 844 F.2d at 1205 (stating that the court "need not traverse the Serbonian Bog of the well pleaded complaint rule . . . because [section 1349] expressly invests jurisdiction in the United States District Courts").

Plaintiffs misconstrue the proper application of the well-pleaded complaint rule. The well-pleaded complaint rule is a gloss on the federal-question subject matter jurisdiction statute (28 U.S.C. § 1331) alone; that rule does not apply to other federal statutes independently creating

federal jurisdiction. *See Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 494-95 (1983);

*Osborn v. Bank of the United States*, 22 U.S. (9 Wheat.) 738, 819 (1824).

Thus, it is indeed long established that, pursuant to the well-pleaded complaint rule, in

order for a claim to arise "under the Constitution, laws, or treaties of the United States," *see* 28

U.S.C. § 1331, the federal question "must be disclosed upon the face of the complaint, unaided

by the answer or by the petition for removal," *Gully v. First National Bank*, 299 U.S. 109, 112-

13 (1936); *see* Lafourche Remand Mem. at 7-8 (relying on *Gully* and other section 1331 cases

decided outside the OCSLA realm); St. Tammany Remand Mem. at 7 (similar); Terrebonne

Remand Mem. at 7 (similar).[3]   But it is equally long established that the "'well-pleaded

complaint' rule applies only to statutory 'arising under' cases." *Am. Nat'l Red Cross v. S.G.*, 505

U.S. 247, 258 (1992). It is therefore wrong to "invoke [the well-pleaded complaint] rule outside

the realm of statutory 'arising under' jurisdiction, *i.e.*, jurisdiction based on 28 U.S.C. § 1331, to

jurisdiction based on a separate and independent jurisdictional grant." *Id.*   OCSLA's section

1349 is such a "separate and independent jurisdictional grant." *See, e.g.*, *Tenn. Gas Pipeline*, 87

F.3d at 153 ("In this case OCSLA provides an alternative basis for original jurisdiction.").

Furthermore, any dispute concerning Shelf operations is necessarily governed by *federal*

law alone, regardless of how it is pleaded. *See Gulf Offshore Co.*, 453 U.S. at 480-81; *Tenn. Gas*

*Pipeline*, 87 F.3d at 153-54 ("OCSLA makes federal law exclusive in its regulation of the OCS,

but in order to fill the substantial gaps in the coverage of federal law, OCSLA adopts the

---

[3] The *only* OCSLA case on which plaintiffs rely for their position that the well-pleaded rule requires a federal claim to be expressly present on the face of their complaints is *Coody v. Exxon Corp.*, 630 F. Supp. 202 (M.D. La. 1986). As Judge Polozola (who wrote *Coody*) later explained in denying a motion to remand, that case has no relevance here. *See Broussard v. John E. Graham & Sons*, 798 F. Supp. 370 (M.D. La. 1992) (distinguishing *Coody* and holding that, where plaintiffs have sought "relief as defined by the 'Laws of Louisiana,'" they have sought relief under OCSLA because "[s]tate law is only applicable as a basis for recovery in a fixed platform case under OCSLA"). Thus, even assuming that *Coody* was correctly decided, it cannot help Plaintiffs here — given that they repeatedly stress that they have brought their claims under Louisiana's wildlife statute, La. R.S. § 56:40.1 *et seq.* — and it certainly offers no reason for this Court to depart from the clear directives of the Fifth Circuit.

'applicable and not inconsistent' laws of the adjacent states as surrogate federal law."). Thus, "[i]f the state causes of action alleged in the complaint are applicable to this case, it is only because state law has been adopted as surrogate federal law *through OCSLA*." *White v. Chevron, USA, Inc.*, Civ. A. No. 90-0113, 1990 WL 28167, at *1 (E.D. La. Mar. 14, 1990).

The nature of the claim and the substantive law that applies are not at issue; rather, the relevant question for purposes of jurisdiction under 43 U.S.C. § 1349(b)(1) is whether the dispute has the required connection to operations on the OCS. *See, e.g., Recar v. CNG Producing Co.*, 853 F.2d 367, 369 (5th Cir. 1988). Jurisdiction depends on the factual and logical connection to operations on the OCS, not on the precise cause of action or substantive legal theory alleged. *Id.* at 370; *see EP Operating Ltd. P'ship*, 26 F.3d at 566 (action to determine ownership rights was within OCSLA jurisdiction); *see also Gulf Offshore Co.*, 453 U.S. at 481 ("[A] personal injury action involving events occurring on the Shelf is governed by federal law, the content of which is borrowed from the law of the adjacent State . . . ."). It thus makes no difference that Plaintiffs seek to characterize their claims as those exclusively under a particular state statute where, as here, their action arose from the BP Defendants' mineral activities on the Shelf.

In light of this controlling law, the fact that Plaintiffs have studiously avoided referring to OCSLA in their Petitions is immaterial. This Court has routinely held that the failure to refer specifically to OCSLA does not transform a federal claim over which federal courts have jurisdiction into a state law claim. *See, e.g., Fields v. Pool Offshore, Inc.*, No. Civ. A. 97-3170, 1997 WL 767634, at *3 (E.D. La. Dec. 8, 1997) ("The fact that plaintiff's state court petition did not invoke jurisdiction under OCSLA is not dispositive of [the removal] issue."); *White*, 1990 WL 28167, at *1 ("Although in this case, the plaintiffs did not plead OCSLA in their state court

petition but only alleged state causes of action, the statute and the jurisprudence clearly demonstrate that because this action arose on the outer continental shelf, the plaintiffs' exclusive remedy is pursuant to OCSLA."); *see also Cameron Offshore Boats, Inc. v. Alpine Ocean Seismic Surveys*, 862 F. Supp. 1578, 1584 (W.D. La. 1994) (court had jurisdiction although "petition does not specifically refer to OCSLA"). It is therefore irrelevant that Plaintiffs attempt to base their claims exclusively on Louisiana's wildlife statute, La. R.S. § 56:40.1 *et seq*.

Nor is it relevant that Plaintiffs have sought to circumvent OCSLA by asserting that they "will never at any time in the future plead . . . any claim or cause of action arising under any federal law . . . ." Lafourche Pet. ¶ 14; St. Tammany Pet. ¶ 16; Terrebonne Pet. ¶ 16. The Fifth Circuit has found OCSLA jurisdiction even where the plaintiff "admits forthrightly that it attempted to craft its lawsuit to avoid federal removal jurisdiction." *Tenn. Gas Pipeline*, 87 F.3d at 152. Plaintiffs thus cannot avoid the force of OCSLA through clever pleading. *See White*, 1990 WL 28167, at *1 ("A plaintiff cannot defeat removal [under OCSLA] by 'artfully' omitting essential federal issues from a state court petition.").

### 2.    The Eleventh Amendment Does Not Prevent Removal.

The Parishes of St. Tammany and Terrebonne argue that state sovereign immunity and the Eleventh Amendment preclude removal of any causes of action (such as the ones at issue here) in which a State is a plaintiff. They are mistaken. As the Parishes concede, the Eleventh Amendment "by its own terms applies only to suits *against* a State." St. Tammany Remand Mem. at 7 (emphasis added); Terrebonne Remand Mem. at 7 (emphasis added). It does not apply to suits brought by States against another party for the simple reason that such a suit is not brought "*against* one of the United States" under the Eleventh Amendment. U.S. Const. Amend. XI. Nor is there any principle of state sovereign immunity implicit in the federal Constitution's structure that prevents removal of suits brought by plaintiff States against other parties.

17

Thus, "where a State is suing parties who are not other states," the suit may "'be brought in or removed to'" the federal district courts "'without regard to the character of the parties.'" *Illinois v. City of Milwaukee*, 406 U.S. 91, 101 (1972) (quoting *Ames v. Kansas*, 111 U.S. 449, 470 (1884)). By voluntarily filing an action in the courts, the State submits itself to the Constitution's Supremacy Clause and thus to Congress's ability to specify that state court actions implicating areas of federal sovereignty or federal rights are removable to federal court. In light of these Supreme Court decisions, "nearly every court to consider Eleventh Amendment immunity in the removal context has relied on the unconditional holding of those cases, in conjunction with the pointed and specific language used in the constitutional text itself, to conclude that a State cannot assert Eleventh Amendment immunity to bar the removal of a suit it has brought." *Oklahoma ex rel. Edmondson v. Magnolia Marine Transp. Co.*, 359 F.3d 1237, 1239-40 (10th Cir. 2004) (collecting cases and holding that the "Eleventh Amendment's abrogation of federal judicial power 'over any suit ... commenced or prosecuted against one of the United States' does not apply to suits commenced or prosecuted *by* a State"); *see also In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 116 (2d Cir. 2007) (holding that "sovereign immunity does not preclude the removal to federal court of a suit filed by a state plaintiff in state court"); *California ex rel. Lockyer v. Dynergy, Inc.*, 375 F.3d 831, 848 (9th Cir. 2004) (holding that "a state that voluntarily brings suit as a plaintiff in state court cannot invoke the Eleventh Amendment when the defendant seeks removal to a federal court of competent jurisdiction"); *Regents of Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1564 (Fed. Cir. 1997) ("[T]he Eleventh Amendment applies to suits 'against' a state, not suits by a state.").

The Fifth Circuit has twice addressed this issue in *dicta*, and both times has indicated that it would follow the majority approach. In *Huber, Hunt & Nichols, Inc. v. Architectural Stone*

18

*Co.*, 625 F.2d 22 (5th Cir. 1980), the Court observed that "*[o]f course, the eleventh amendment is inapplicable where a state is a plaintiff.*" *Id.* at 24 n.6 (emphasis added). And in a recent case, the Fifth Circuit recognized that a "number of circuit courts have interpreted the Eleventh Amendment as only applicable when a state is a defendant." *Louisiana ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418, 431 n.12 (5th Cir. 2008) (citing cases). Those cases, according to the Fifth Circuit, are "consistent with Supreme Court precedent." *Id.*

The Parishes nevertheless urge this Court to adopt an extra-textual extension of Eleventh Amendment immunity not supported by the Constitution's plain language or the law of the Circuits. But the Parishes rely (with only three exceptions, discussed immediately below) on cases in which the State was the ***defendant*** in a cause of action in which another party did indeed bring suit "against a State." *See* St. Tammany Remand Mem. at 7-8 (relying on cases in which States were defendants); Terrebonne Remand Mem. at 7-8 (same). Those cases do not purport to discuss, and thus cannot support extension of, state sovereign immunity in cases where States are plaintiffs, as is the case here in the Parishes' suits.

The three cases on which the Parishes rely that do address plaintiff States are the Fifth Circuit's opinion in *In re Katrina Canal Litig. Breaches*, 524 F.3d 700 (5th Cir. 2008), and two district court cases, *Moore ex rel. State of Miss. v. Abbott Labs., Inc.*, 900 F. Supp. 26 (S.D. Miss. 1995), and *California v. Steelcase, Inc.*, 792 F. Supp. 84 (C.D. Cal. 1992). But none of these cases helps the Parishes. The Fifth Circuit in *In re Katrina* expressly did not reach the sovereign immunity issue because resolution of the case was possible without addressing the constitutional question. *See* 524 F.3d at 711. Instead, the Court canvassed the above-described case law holding that sovereign immunity does not prevent removal of cases brought by States, without any note of criticism of the holdings in those cases. *See id.* at 710-11.

19

Nor are the District Court cases in *Moore* and *Steelcase* helpful to the Parishes' argument. To be sure, both of those cases do allow plaintiff States to assert sovereign immunity against defendant parties. But those two cases are no longer good law. For its part, the Central District of California's opinion in *Steelcase* has been "deem[e]d unpersuasive" (and hence essentially overruled) by the Ninth Circuit itself. *See Dynergy*, 375 F.3d at 849 n.15. As to *Moore*, the district court's reasoning in that case relies upon only the conclusion that "the reasoning of the [now-overruled] *Steelcase* court [is] sound." 900 F. Supp. at 30. It is no wonder, then, that recent Circuit cases do not follow these two outdated opinions. *See, e.g.,* *MTBE*, 488 F.3d at 120 ("whatever force these cases had is undermined by the fact that *Steelcase* has been overruled by the Ninth Circuit"); *Dynergy*, 375 F.3d at 849 n.15. The two cases therefore offer no support for a departure from the wealth of Circuit case law clearly holding that States cannot assert sovereign immunity when proceeding as plaintiffs. Accordingly, the Court should reject the Parishes' sovereign immunity argument.

> **3. Plaintiffs' Remaining Arguments Impermissibly Seek To Play Shell Games As Between Governing Substantive Law Issues And The Actual Jurisdictional Question That Is Before This Court.**

Plaintiffs make a series of arguments — often premised on OCSLA's "surrogate federal law" provision, 43 U.S.C. § 1333(a)(2)(A), OCSLA's LHWCA provision, 43 U.S.C. § 1333(b), or federal maritime law — that confuse the critical distinction between substantive law providing standards of conduct and the issue of jurisdiction. But as the Fifth Circuit held in *Dahlen v. Gulf Crews, Inc.*, 281 F.3d 487 (5th Cir. 2002), "[t]he decision to apply maritime law [rather than state law as surrogate federal law] has nothing to do with whether or not a federal court has jurisdiction." *Id.* at 492 (holding that the court "clearly" had jurisdiction under section 1349(b)). In this case, too, the jurisdictional question before this Court is separate and apart from the governing law issues Plaintiffs seek to interpose.

Specifically, Plaintiffs argue that this Court lacks jurisdiction because: (1) the Deepwater Horizon rig was temporarily, not permanently, attached to the seabed at the time of the explosion; (2) the "*situs*" of the alleged tort is the coastal waters of Louisiana; and (3) maritime law governs. As explained below, these issues relate to the question of the appropriate law that governs these actions, which this Court need not determine at this stage of the proceedings. What Plaintiffs ignore as an inconvenient truth is that choice-of-law issues do not affect this Court's jurisdiction over these actions. Simply put, *either* surrogate federal law under section 1333(a)(2)(A) *or* maritime law governs these cases. The key point under section 1349(b)(1) and the federal removal statute, 28 U.S.C. § 1441, however, is that this Court has jurisdiction over these actions *regardless of* whether maritime law or surrogate federal law controls.

> a.   **Plaintiffs' Arguments Regarding The Alleged *Situs* Of The Tort And The Rig's Temporary Attachment To The Seabed Are Relevant, At Most, To The Governing Law Question Under Section 1333(a)(2)(A), Not The Jurisdictional Question.**

As explained above, section 1349(b)(1) establishes a sweeping grant of jurisdiction for all cases "arising out of, or in connection with (A) any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals," 43 U.S.C. § 1349(b)(1), which the Fifth Circuit has read "broadly" to encompass all cases that would not have arisen "but for" operations on the Shelf.

Plaintiffs seek to muddy the clear and simple jurisdiction analysis found in Fifth Circuit decisions by tossing out various issues relating to the proper application of OCSLA's surrogate federal law provision under section 1333(a)(2)(A). *First*, they argue that this court lacks jurisdiction under section 1349(b)(1) over this case because the Deepwater Horizon rig was not permanently attached to the sea bottom. Plaintiffs point out that OCSLA's "surrogate federal law" provision, 43 U.S.C. § 1333(a)(2)(A), applies to "artificial islands and fixed structures" on

the OCS (and does not expressly include devices "temporarily attached" to the seabed, in contrast to OCSLA's general assertion of federal sovereignty in § 1333(a)(1)), and claim that this terminology thereby excludes from OCSLA's jurisdictional coverage under section 1349(b) rigs that are not permanently attached to the sea bottom. *See* St. Tammany Remand Mem. at 6 ("Since the Deepwater Horizon is not an 'artificial island' or 'fixed structure,' it is not covered by OCSLA § 1333(a)(2)(A), because OCSLA § 1333(a)(2)(A) does not contain a 'temporarily attached' provision. Thus, BP's purported basis for removal jurisdiction — OCSLA § 1349(b)(1) — does not support removal jurisdiction."); Terrebonne Remand Mem. at 6 (same); *see also* Lafourche Remand Mem. at 6 (similar).

Plaintiffs' argument is a classic *non sequitur*. Simply put, whether OCSLA's "surrogate federal law" provision in section 1333(a)(2)(A) applies here does not change the jurisdictional mandates and rights conferred by section 1349(b)(1). To the contrary, section 1333(a)(2)(A) is a governing law provision, not a jurisdictional provision, and it is well-settled that OCSLA jurisdiction is independent of the governing law. *See, e.g., Dahlen*, 281 F.3d at 492 (explaining the distinction). That is why there is a wealth of Fifth Circuit case law asserting OCSLA jurisdiction over structures temporarily attached to the sea floor. *See, e.g., Demette v. Falcon Drilling Co.*, 280 F.3d 492 (5th Cir. 2002) (addressing OCSLA claim relating to jack-up rig in Gulf of Mexico), *overruled on other grounds, Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009) (*en banc*); *Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531 (same for semi-submersible drilling rig), *overruled on other grounds, Grand Isle Shipyard*, 589 F.3d 778; *see also Curtis v. Schlumberger Offshore Serv., Inc.*, 849 F.2d 805 (3d Cir. 1988)

(similar; semi-submersible drill rig). By contrast, Plaintiffs fail to cite a single case in which a court declined OCSLA jurisdiction because a rig's attachment to the seabed was temporary.[4]

In a variation on this argument, Plaintiffs argue that, because the Deepwater Horizon allegedly became "detach[ed]" during the blowout of the well, this Court lacks jurisdiction. St. Tammany Remand Mem. at 6; Terrebonne Remand Mem. at 6. Once again, the question of whether any attachment to the seabed was "temporary" is irrelevant to the Court's need to confirm jurisdiction here. Moreover, the Fifth Circuit has squarely held that OCSLA jurisdiction cannot turn on such fleeting considerations. To the contrary, addressing whether a dispute over offshore facilities that had "lain dormant for the last three years" came within OCSLA jurisdiction, the Fifth Circuit held that:

> Production from oil and gas facilities can be interrupted and there can be a hiatus in activity for any number of reasons. *Such temporary lulls in activity should not control jurisdiction in federal court.* These offshore facilities were erected on the OCS, they were used to transport minerals in the past, they may be used to transport minerals in the future, and they will eventually have to be removed pursuant to federal regulations. We find that there is an "operation" on the OCS which can be the basis of jurisdiction in the district court during this entire cycle as opposed to jurisdiction turning on and off according to whether there is current activity on the facilities erected on the OCS.

---

[4] In a passing footnote argument, the Parishes of St. Tammany and Terrebonne argue that "[t]here is a serious question as to whether the Deepwater Horizon may be deemed a 'temporarily attached' vessel during a drilling operation." St. Tammany Remand Mem. at 3 n.6; Terrebonne Remand Mem. at 3 n.6. Leaving aside the Parishes' failure to demonstrate this issue's relevance to the jurisdictional question before this Court, the Parishes' argument is not a serious one. The Deepwater Horizon was indisputably "attached" to the seabed for drilling purposes; it is therefore difficult to understand how it could be "deemed" to be not attached. The Parishes' assertion that "[t]wo cases involving non-drilling dynamically positioned vessels found no OCSLA jurisdiction," *id.*, again confuses jurisdictional and choice-of-law questions. *See Alex v. Wild Well Control, Inc.*, Civil Action No. 07-9183, 2009 WL 2599782, at *7 (E.D. La. Aug. 18, 2009) (granting summary judgment, not dismissing for lack of jurisdiction, and determining that section 1333(a)(2) did not apply when there was "no evidence that the vessel was attached to the seabed"); *Global Indus. v. Pipeliners Local Union 798*, No. Civ.A. 04-1249, 2006 WL 724815 (W.D. La. Mar. 16, 2006) (addressing summary judgment, not dismissing for lack of jurisdiction, and determining that pipe laying vessel did not come within the scope of OCSLA; also observing that a drilling rig temporarily attached to the seabed *did* come within OCSLA's scope). At any event, in those cases, the relevant vessels (unlike the Deepwater Horizon) were *not* attached to the seabed for drilling purposes. The cases thus say nothing about the *jurisdictional* issues that the Parishes must prevail on to secure a remand back to state court.

*EP Operating Ltd. P'ship*, 26 F.3d at 568; *see also Texaco*, 448 F.3d at 770 ("OCSLA's broad grant of jurisdiction to the federal courts over cases arising out of the development of the seabed is not curtailed simply because the [rig] was in motion at the time of the crane or wire rope's failure."). Plaintiffs' argument that OCSLA jurisdiction over a rig attached to the seabed is severed as soon as a blowout temporarily detaches such a rig has no merit. Plaintiffs point to no authority whatsoever suggesting that OCSLA jurisdiction depends on such transient considerations.

*Second*, Plaintiffs argue that, because the Deepwater Horizon's explosion allegedly caused damage in Louisiana, Plaintiffs' causes of action do not meet OCSLA's purported "*situs*" jurisdictional requirement. Again, this argument confuses OCSLA governing law with OCSLA jurisdiction. With respect to selection of the governing law to apply, various OCSLA provisions may in fact incorporate a "*situs*" requirement requiring harm to have occurred on the OCS. Such an issue is not ripe at this time. With respect to jurisdiction, however, "[b]y including no direct geographic limitation, § 1349(b)(1) describes a broader coverage than" the remainder of OCSLA's provisions. Robertson, 38 J. MAR. L. & COM. at 529-30.

Thus, the cases on which Plaintiffs rely (with two exceptions discussed below, one of which undermines Plaintiffs' position) fall in three categories, none of which establishes a *situs* requirement applicable to section 1349 jurisdictional disputes. *First*, Plaintiffs cite numerous cases addressing the separate question of whether to apply governing law under OCSLA or some other statute — *none of which even mention section 1349*.[5] Plaintiffs fail to explain why those

---

[5] *See* St. Tammany Remand Mem. at 4 n.8 (citing *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 220 (1986) (addressing whether section 1333(a) of OCSLA or the Death on the High Seas Act ("DOHSA") provided the appropriate remedy when helicopter carrying rig workers crashed on the high seas in an accident unrelated to drilling activities and holding that "[b]ecause the fatalities underlying this suit did not arise from an accident in the area covered by OCSLA but rather occurred on the high seas, DOHSA plainly was intended to control"); *Mills v. Director, OWCP*, 877 F.2d 356, 359 (5th Cir. 1989) (interpreting another provision of OCSLA, 43 U.S.C. § 1333(b), to address whether a land-based welder qualifies for benefits under the Longshore and Harbor Workers'

24

cases are at all relevant to the jurisdictional inquiry before the Court. *Second*, the Parish of Lafourche cites non-OCSLA case law applying a locus-of-harm test. *See* Lafourche Remand Mem. at 5. But the fact that courts apply locus-of-harm tests in other contexts (such as admiralty jurisdiction) does not alter the fact that the plain language of section 1349(b)(1) does not establish such a test. Plaintiffs cannot simply drag into section 1349(b)(1) any restrictions on jurisdiction they might desire borrowed from different parts of OCSLA or from other statutes or contexts entirely. *Third*, Plaintiffs cite cases establishing that OCSLA does not apply to torts occurring on fixed platforms that are one mile off the Louisiana coast and, hence, not on the Shelf. *See* Lafourche Remand Mem. at 6 (citing *Bible v. Chevron Oil Co.*, 308 F. Supp. 312 (E.D. La. 1969)). But cases clarifying that OCSLA does not apply to torts on non-OCS platforms say nothing about how OCSLA applies to torts arising out of conduct on OCS rigs.

The one Fifth Circuit exception to the above three categories — the Court's unpublished *per curiam* disposition in *Golden v. Omni Energy Services Corp.*, 242 Fed. Appx. 965, 967 (5th Cir. July 27, 2007) — addressed a helicopter accident on land that injured a rig worker being transported to his job on an offshore platform in the Gulf of Mexico. *Golden* held that a district court, in determining OCSLA jurisdiction, must "take into account the *location of incidents giving rise to the lawsuit*. Here, the undisputed facts show that the helicopter accident giving rise to [the] lawsuit did not occur on the Continental Shelf." *Id.* at 967-68 (emphasis added). However, to the extent that this represents an additional requirement — above and beyond the

---

Compensation Act as incorporated under OCSLA and holding that "OCSLA's provision adopting LHWCA includes a situs of injury requirement"); *Demette*, 280 F.3d at 496 (holding that to determine whether OCSLA makes the LHWCA applicable, court must determine whether the injury occurred on an OCSLA *situs*)); Terrebonne Remand Mem. at 4 n.8 (same); *see also* Lafourche Remand Mem. at 4 (citing *Oppen v. Aetna Ins. Co.*, 485 F.2d 252 (9th Cir. 1973) (affirming determination that plaintiffs' claims were not compensable and applying traditional locus-of-the-tort test for admiralty jurisdiction in determining whether maritime law governed claims); *Bible v. Chevron Oil Co.*, 308 F. Supp. 312 (E.D. La. 1969) (holding that OCSLA did not apply to fixed platform one mile from coast, and applying admiralty test to determine whether maritime law governed claims)).

"but for" test reflected in the remainder of the Fifth Circuit's jurisprudence — the requirement

undermines Plaintiffs' arguments in this case. Contrary to Plaintiffs' argument that the *situs* for

jurisdictional purposes is "the location of the injury," St. Tammany Remand Mem. at 4 n.8;

Terrebonne Remand Mem. at 4 n.8, *Golden* says that district courts must "take into account the

location of incidents giving rise to the lawsuit," *i.e.*, the location of the helicopter accident. In

this case, it is undisputed that the location of the incidents giving rise to the lawsuit — *i.e.*, the

explosion — is the *Deepwater Horizon* rig, located indisputably on the Shelf.[6]

> **b.    Even If Maritime Law Governs These Cases, Section 1349(b)(1) Provides Jurisdiction.**

Plaintiffs next argue that their petitions should be reconceptualized as presenting

maritime claims, and that this Court lacks jurisdiction over such claims under OCSLA and the

removal statute, 28 U.S.C. § 1441. *See* Lafourche Remand Mem. at 5-6 & n.2; Terrebonne

Remand Mem. at 11-14; St. Tammany Remand Mem. at 11-14. Once again, Plaintiffs miss the

critical distinction between governing law and jurisdiction. Even assuming maritime law applies

to this case, OCSLA provides original jurisdiction under section 1349(b)(1) over maritime cases

involving operations on the OCS. Indeed, maritime law often applies in the absence of the

application of state law transformed into surrogate federal law by section 1333(a)(2)(A), because

OCSLA was "intended 'to govern the *full range* of potential legal problems that might arise in

connection with operations on the Outer Continental Shelf.'" *EP Operating Ltd. P'ship*, 26 F.3d

---

[6] The second case that plaintiffs cite that addresses section 1349 jurisdiction is the district court opinion in *Landry v. Island Operating Co.*, Civil Action No. 09-1051, 2009 WL 3241560 (W.D. La. Sept. 30, 2009), portions of which could be read to attach a *situs* requirement to OCSLA jurisdiction under section 1349. But even *Landry* recognized that "the jurisdiction-granting provision [section 1349], in reality, is somewhat broader in scope" than 43 U.S.C. § 1333(a)(1), *see id.* at *2, and independently applied the "but for" test to determine that it lacked jurisdiction, *see id.* at *4. Even assuming that *Landry* was correctly decided, it confesses adherence to the "but for" test consistently applied by the Fifth Circuit to determine section 1349 jurisdiction. Under that test, the *Landry* court concluded that the plaintiff's injuries did not "hinge on the fact that the tanker had seen OCS action or that his independently-contracted employer conducted OCS operations." *Id.* at *5. Here, "but for" actions on the Shelf, there would be no oil spill from the subsea reservoir on the Shelf, which spill the Parishes contend are harming wildlife.

26

at 569 (citing *Laredo Offshore*, 754 F.2d at 1228) (emphasis added); *see also* H.R. Rep. No. 95-590, at 128 (1977) ("The committee intends that *Federal law is, therefore, to be applicable to* activities on drilling ships, *semi-submersible drilling rigs*, and other watercraft, when they are connected to the seabed by drillstring, pipes, or other appurtenances, on the OCS for exploration, development, or production purposes.") (emphasis added). Thus, the Fifth Circuit has clearly held that the "conclusion that OCSLA confers original jurisdiction over this suit is unaffected by the maritime nature of the underlying claim .... [T]he district court may have both admiralty and OCSLA jurisdiction." *Tenn. Gas Pipeline*, 87 F.3d at 155.

As a result, although Plaintiffs are correct that maritime claims do not "aris[e] under the Constitution, treaties or laws of the United States" for purposes of federal question and removal jurisdiction, that assertion is irrelevant here. *See* St. Tammany Remand Mem. at 11 (citing *Romero v. Int'l Terminal Operating Co.*, 258 U.S. 354, 377-79 (1959)); Terrebonne Remand Mem. at 11 (same); Lafourche Remand Mem. at 5 (similar). It is "well-established" that there is no bar to removal of maritime claims "when original jurisdiction is based on something other than admiralty" and that "OCSLA provides an alternative basis for original jurisdiction" of such claims. *Tenn. Gas Pipeline*, 87 F.3d at 153; *Hufnagel*, 128 F.3d at 348-49 & n.4 (noting that removal of maritime claims "is nevertheless possible if federal jurisdiction is based on something other than admiralty," such as OCSLA); *compare In re Dutile*, 935 F.2d 61, 62 (5th Cir. 1991) (remanding for lack of jurisdiction where there was no separate source of jurisdiction and no diversity), *cited in* St. Tammany Remand Mem. at 11; Terrebonne Remand Mem. at 11.

And it is similarly true, but equally irrelevant for jurisdictional purposes, that, as Plaintiffs argue, "where admiralty and OCSLA jurisdiction overlap, the case is governed by maritime law," St. Tammany Remand Mem. at 12 (quoting *Laredo*, 754 F.2d at 1229);

Terrebonne Remand Mem. at 12. Once again, that issue goes to the governing law that this Court must apply, not to its jurisdiction. *See Recar*, 853 F.2d at 370 (holding that removal was proper under OCSLA and noting that the district court may on remand "characterize the wrong as a maritime tort which requires application of general maritime law," but that "we are not called upon at this time to decide which body of law applies to this case").

Thus, the "conclusion that OCSLA confers original jurisdiction over this suit is unaffected by the maritime nature of the underlying claim." *Tenn. Gas Pipeline*, 87 F.3d at 155. Just as in *Tennessee Gas Pipeline*, "even assuming that [Plaintiffs] ha[ve] defeated diversity jurisdiction and that [their] well-pleaded complaint asserts a maritime claim that is saved to suitors, [this Court] nevertheless ha[s] removal jurisdiction" under OCSLA. *Id.* at 152.

In contrast to this straightforward application of Fifth Circuit law, Plaintiffs' argument is not only unsupported, but also illogical. Plaintiffs claim (1) that "OCSLA does not require application of La. R.S. 56.10," because "federal maritime law applies of its own force," St. Tammany Remand Mem. at 11; (2) but that application of the "maritime but local" doctrine requires application of La. R.S. § 56.10 because "local and state interests predominate," *id.* at 12; (3) and that as a result "[m]aritime jurisdiction prevents removal of these claims," *id.* at 13. *See also* Terrebonne Remand Mem. at 11-13 (same). Plaintiffs offer no relevant support for this circular argument — which assumes that maritime jurisdiction first displaces state law "of its own force," yet is later somehow displaced by state law because "local and state interests predominate." Nor do Plaintiffs offer any support for the wholly unsubstantiated and sweeping theory that "maritime jurisdiction prevents removal of these claims." (If that were true, how

could *Tennessee Gas Pipeline* have found OCSLA jurisdiction over maritime claims?)  This

Court should not bless Plaintiffs' illogical and circular readings of OCSLA and maritime law.[7]

## II.   THE PARISH OF LAFOURCHE'S ARGUMENT REGARDING DIVERSITY JURISDICTION IS IRRELEVANT.

The Court need not address the Parish of Lafourche's red herring argument regarding

diversity jurisdiction (made in its Motion to Remand, *see* Lafourche Mot. to Remand at 1-2, but

not in its accompanying Memorandum in Support of its Motion) because the BP Defendants

have never asserted diversity of the parties as a basis for jurisdiction and do not do so now.  *See*

Notice of Removal ¶ 22 ("This matter may be removed without regard to the citizenship or

residence of the parties in accordance with 28 U.S.C. § 1441(b) . . . ."); *see also id.* ¶ 25.

## III.   GIVEN THE PRESENCE OF STRONG AND PLAIN GROUNDS FOR OCSLA REMOVAL UNDER FIFTH CIRCUIT PRECEDENT, THE COURT SHOULD REJECT THE PARISH OF LAFOURCHE'S REQUEST FOR COSTS AND ATTORNEYS' FEES.

If the Court agrees with the merits of the OCSLA removal arguments detailed above,

then it goes without saying that the Parish of Lafourche's request for attorney's fees and costs

must also be rejected.  (The Parishes of St. Tammany and Terrebonne responsibly chose not

request attorney's fees and costs.)  Only if the Court were to disagree with the BP Defendants'

invocation of the OCSLA jurisdictional statute under the case law in this Circuit and hold that it

lacked subject matter under OCSLA's section 1349, *see* 28 U.S.C. § 1447(c), would this Court

then have to decide "whether [BP] had objectively reasonable grounds to believe the removal

---

[7] Plaintiffs also advance an argument from the second sentence of 28 U.S.C. § 1441(b), which provides that "[a]ny other such action [*i.e.*, actions not 'founded on a claim or right arising under the Constitution, treaties or laws of the United States'] shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  *See* St. Tammany Remand Mem. at 6 & n.9, 11 (maritime claims "may only be removed if complete diversity exists"); Terrebonne Remand Mem. at 6 & n.9, 11 (same); Lafourche Remand Mem. at 6.  The argument is based on an irrelevancy.  This Court has jurisdiction under section 1441(b) because none of the BP Defendants "is a citizen of the State [*i.e.*, Louisiana] in which [the] action is brought."  28 U.S.C. § 1441(b); Notice of Removal ¶ 30; *see also Tenn. Gas Pipeline*, 87 F.3d at 155-56 (holding that court had jurisdiction under 1441(b) over OCSLA maritime claim where defendant "is a citizen of the state of Texas, but suit was brought in Louisiana," because "removal is consistent with the second sentence of § 1441(b)").

was legally proper." *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 293 (5th Cir. 2000). But any such request for costs and attorneys' fees under 28 U.S.C. § 1447(c) should be quickly denied unless "the removing party *lacked an objectively reasonable* basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) (emphasis added).

In this case, objectively reasonable grounds are manifest. "[W]hen an objectively reasonable basis exists, fees should be denied." *Id.* Contrary to the Parish of Lafourche's arguments, a complaint need not specify a federal claim on its face in order for federal jurisdiction to apply under OCSLA, and OCSLA jurisdiction clearly applies to the BP Defendants' operations, which are intimately connected to the Shelf. Thus, even if this Court disagreed with the BP Defendants' arguments, the Parish of Lafourche has not met its high burden of showing objective unreasonableness. *See Valdes*, 199 F.3d at 293 (concluding that a court "need not express an opinion" on a removing party's authorities "except to say that [the removing party] could conclude from [them] that its position was not an unreasonable one").

## CONCLUSION

For these reasons, the BP Defendants respectfully request that Plaintiffs' Motions to Remand to State Court be denied, that the Parish of Lafourche's request for fees and costs be denied, and that this action be maintained in federal court.

30

Respectfully submitted,

s/ Paul Matthew Jones

Donald R. Abaunza (Bar #2273)
R. Keith Jarrett (Bar #16984)
Don K. Haycraft (Bar #14361)
Jonathan A. Hunter (Bar #18619)
Mark D. Latham (Bar #19673)
Robert E. Holden (Bar #6935)
**LISKOW & LEWIS**
701 Poydras Street, Suite 5000
New Orleans, LA 70139-5099
Telephone:     (504) 581-7979
Facsimile:     (504) 556-4108

Paul Matthew Jones (Bar #19641)
April L. Rolen-Ogden (Bar #30698)
Stuart T. Welch (Bar #31359)
**LISKOW & LEWIS**
822 Harding Street
Lafayette, LA 70503
Telephone:     (337) 232-7424
Facsimile:     (337) 267-2399

*Attorneys for BP Exploration & Production, Inc.,
BP Products North America, Inc., and
BP America Inc.*

Jeffrey Bossert Clark
Joseph A. Eisert
Aditya Bamzai
**KIRKLAND & ELLIS LLP**
655 Fifteenth Street, N.W.
Washington, DC 20005
Telephone:     (202) 879-5960
Facsimile:     (202) 879-5200

Richard C. Godfrey, P.C.
J. Andrew Langan, P.C.
Andrew B. Bloomer, P.C.
**KIRKLAND & ELLIS LLP**
300 North LaSalle Street
Chicago, IL 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

*Of Counsel*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing **BP DEFENDANTS'**
**COMBINED MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTIONS TO**
**REMAND TO STATE COURT** has been served upon all counsel of record by placing same in
the United States mail, properly addressed and postage prepaid, this 27th day of July, 2010.

s/ Paul Matthew Jones